ELLIS EARL WHITE, APPELLANT, v. THE STATE OF NEVADA, RESPONDENT.

No. 4955

August 15, 1966                    417 P.2d 592

---

[3]This court at the time of hearing released Orsborn from custody.

*Thomas R. C. Wilson II,* and *John C. Renshaw,* of Reno, for Appellant.

*Harvey Dickerson,* Attorney General, of Carson City; *William J. Raggio,* Washoe County District Attorney, and *Herbert F. Ahlswede,* Chief Criminal Deputy, of Reno, for Respondent.

## OPINION

By the Court, THOMPSON, J.:

A jury found White guilty of first degree murder and sentenced him to death. At issue is whether his federal constitutional rights were violated when the trial court allowed the state to introduce in evidence certain incriminating statements made by him while in custody and in response to official interrogation. For the reasons hereafter stated we hold that the reception of such evidence was constitutionally impermissible. Therefore, we set aside his conviction and remand for a new trial.

The trial below occurred after Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), and before Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Since the new constitutional doctrine announced in those cases has prospective application (Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966)), the issue at hand is controlled by Escobedo.

On October 30, 1964, Ray M. Davis was found dead in his car at the Sparks Nugget parking lot. He had been killed by multiple blows to the head. The same day, White, accompanied by his wife, went to the Reno police station and told the desk officer that he wished to talk to someone in charge about the death of a man in Sparks. The desk officer told Mrs. White to wait in the lobby. He then took White down a corridor to the Inspectors' Bureau where Sergeant Guardia was on duty. Police Officer Nielsen was also present. At approximately 5 p.m. interrogation was commenced by the sergeant, the first of a continuous series of interrogations lasting approximately 5 hours. When the sergeant had finished questioning, White was immediately taken to another room and interrogated by the district attorney. When the district attorney was through, White was turned over to the assistant police chief of the city of Reno for

more questioning, and finally to the police chief of the city of Sparks. Each interrogation was simply a part of one continuous process. Cf. Leyra v. Denno, 347 U.S. 556, 74 S.Ct. 716, 98 L.Ed. 948 (1954).

As we read the record, neither the sergeant, the district attorney, the assistant police chief of the city of Reno, nor the police chief of the city of Sparks complied with the constitutional requirements expressed in Escobedo v. Illinois, supra. The trial court would not allow the testimony of the sergeant who first questioned White, nor the statement of that inquiry prepared by the police officer and signed by White. However, the court did permit the state to introduce in evidence the interrogations by the district attorney, the assistant police chief of the city of Reno, and the police chief of the city of Sparks, which followed in unbroken sequence.[1]

1. White testified that he asked the first interrogator, the sergeant, "what I would have to do to get an attorney now." His testimony is not denied by the sergeant. Indeed, the sergeant acknowledged that, at the very beginning of his interrogation, the subject of an attorney and the cost involved was mentioned. The sergeant advised White that "the cost varied with the attorney," and that "he'd be given an attorney eventually." White thus made known his desire for an attorney immediately. The sergeant's response that "he would be given an attorney eventually" was a denial of White's right to counsel at that time. Cf. Bean v. State, 81 Nev. 25, 398 P.2d 251 (1965). Nor did the sergeant advise White of his absolute constitutional right to remain silent.

---

[1]The trial court also allowed the desk officer to testify to his conversation with White when White voluntarily appeared at the police station. He testified that White said, " 'I'd like to see somebody in charge.' He stated that he believed that he was the man that we were looking for. And when I asked him in connection with what, he said 'the death of a man in Sparks' in the early morning hours of that date." This voluntary statement by White, made before he was a suspect, and before he was taken into police custody, does not fall within the prohibition of Escobedo. As to this bit of evidence the lower court ruled correctly.

Escobedo held that where "the investigation is no longer a general inquiry into an unsolved crime but has begun to focus on a particular suspect, the suspect has been taken into police custody, the police carry out a process of interrogations that lends itself to eliciting incriminating statements, the suspect has requested and been denied an opportunity to consult with his lawyer, and the police have not effectively warned him of his absolute constitutional right to remain silent, the accused has been denied 'the assistance of counsel' in violation of the Sixth Amendment to the Constitution as 'made obligatory upon the States by the Fourteenth Amendment,' Gideon v. Wainwright, 372 U.S. at 342 and that no statement elicited by the police during the interrogation may be used against him at a criminal trial."

The procedural safeguards established by Escobedo were not followed by the sergeant. The trial court properly excluded his interrogation of White from jury consideration. The same ruling should have been made with regard to the subsequent interrogations by the district attorney, the assistant police chief of the city of Reno, and the police chief of the city of Sparks, since they were part of one continuous process. Leyra v. Denno, supra. The failure of the first interrogator to honor the constitutional rights of White fatally infected the subsequent interrogations which followed in unbroken sequence. The confession given by White to the sergeant was simply filled in and perfected by the additional statements given in rapid succession to the district attorney and two police officers.[2] The error is prejudicial per se.

2. White's second assignment of error also has merit. The language of NRS 175.235 was copied as a jury instruction. It provides: "Upon a trial for murder, the commission of the homicide by the defendant being

[2]Subordinately, we note that the interrogations conducted by the district attorney, the assistant police chief of the city of Reno, and the police chief of the city of Sparks, if separately considered, also failed to meet the constitutional standards of Escobedo.

proved, the burden of proving circumstances of mitigation, or that justify or excuse it, shall devolve upon him, unless the proof on the part of the prosecution tends to show that the crime committed amounts only to manslaughter, or that the defendant was justifiable or excusable."

On a prior occasion this court condemned the giving of that instruction, State v. Fitch, 65 Nev. 668, 200 P.2d 991 (1948), but, in the circumstances there present, concluded that the error was harmless. California, from whom we borrowed our statute, has repeatedly held that the jury should not be instructed in the language of this statute. People v. Deloney, 41 Cal.2d 832, 264 P.2d 532 (1953); People v. Letourneau, 34 Cal.2d 478, 211 P.2d 865 (1949); People v. Cornett, 33 Cal.2d 33, 198 P.2d 877 (1948); People v. Valentine, 28 Cal.2d 121, 169 P.2d 1 (1946); People v. Thomas, 25 Cal.2d 880, 156 P.2d 7 (1945).

One vice of the instruction is its propensity to mislead. For example, it does not apply in determining the degree of murder, but applies only in deciding whether the homicide was murder or manslaughter, or was excusable or justifiable. Yet a jury might well interpret the words "circumstances in mitigation," to include circumstances that reduce the homicide from first degree murder to second degree murder, and require the defendant to establish those circumstances. If so interpreted, the burden cast upon the state to prove every element of the crime charged beyond a reasonable doubt would be substantially diluted, if not totally erased. This, of course, is impermissible, for that burden never shifts or changes. We conclude that the words of NRS 175.235 should never be copied as a jury instruction in a murder trial.

The defendant-appellant is indigent. We commend his court-appointed counsel for their services and direct the lower court to give them the certificate specified in subsection 3 of NRS 7.260, to enable them to receive compensation for their services on appeal.

Reversed and remanded for new trial.

ZENOFF, D. J., and BREEN, D. J., concur.