438 P.2d 244 (1968)
Harold Chester GUYETTE, Appellant,
v.
STATE of Nevada, Respondent.
No. 5360.
Supreme Court of Nevada.
February 29, 1968.
*245 James W. Johnson, Jr., James F. Sloan, Reno, for appellant.
Harvey Dickerson, Atty. Gen., Carson City, Dennis E. Evans, Churchill County Dist. Atty., Fallon, for respondent.

OPINION
THOMPSON, Chief Justice.
A jury convicted Harold Chester Guyette of first degree murder and directed his imprisonment for life without the possibility of parole. Judgment and sentence have been entered upon the verdict. On this appeal he contends that evidence obtained in violation of the Fifth [Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)] and Sixth [Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964)] Amendments was used to convict him. Other claims of error concerning the reception of evidence relevant to the case, but without constitutional implications, also are pressed. We turn first to consider the claims of constitutional error.
1. Guyette was charged with the March 12, 1966, murder of one Dean Briggs, at Briggs' Sav'n Sam's Service Station forty miles north of Fallon, Nevada. Mrs. Briggs, the mother of Dean Briggs, also was found dead. The trial below, however, concerned only the killing of Mr. Briggs. On April 1, 1966, Guyette was arrested at Elkhart, Indiana, pursuant to a city court warrant for failing to appear in court regarding a prior traffic accident. The arresting officers also suspected that he might be the person who, according to an all points bulletin, had committed a double murder near Fallon, Nevada. Guyette has been in custody since his arrest.
The claim that the federal protections of the Fifth and Sixth Amendments were not honored is directed to a series of in-custody interrogations conducted by Indiana and Nevada law officers, and was presented to the trial court in the absence of the jury. The thrust of his contention is that required warnings were not given to assure awareness of constitutional rights. He does not assert that his response to interrogation was coerced or forced from him except to the extent that the failure to fully warn him bears upon that subject. In line with Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), and Sims v. Georgia, 389 U.S. 404, 88 S.Ct. 523, 19 L.Ed.2d 634 (1967), the lower court made specific findings. It ruled that the warnings met constitutional standards, and that all statements of the suspect were voluntarily given without coercion, actual or psychological.
All interrogations occurred after the Escobedo decision but before Miranda was handed down. However, the trial itself was post-Miranda. It is within this framework that we must evaluate the legal consequences flowing from the series of interrogations which we shall now summarize.

A. The Indiana interrogations.
1. On the day of arrest, April 1, Guyette was questioned for about one and one half hours concerning the Nevada killings. Before questioning, the officer advised him that he had the right to talk to an attorney if he wished; the right to remain silent; and that anything he said could and would be used in court against him. He was not advised that he had the right to the presence of an attorney, either retained or appointed. The interrogation and responses, however, do not appear in the record before us. The prosecution did not offer that evidence.
2. On the following day, April 2, he was again examined for about one hour. The record does not reflect that warnings were given before questioning. Neither does the record show the questions or responses. It reveals only the fact that interrogation took place.
3. On April 3, the record is the same as the April 2 occurrence, and shows only the fact of interrogation.
*246 4. On April 4, another interrogation occurred. Again, the substance is not disclosed. About 15 minutes before the end of that session the suspect indicated that perhaps he should consult an attorney. He was handed a phone book and left alone with a phone to use. He did not use it. Questioning was resumed. He was not told that he had the right to the presence of an attorney, either retained or appointed.
5. On April 5, Guyette was questioned once more. The trial record does not tell us about that session; only that it happened. It is likewise silent with respect to warnings.
6. The next day, April 6, at still another interrogation, the suspect made an incriminating statement which was received as trial evidence. When asked about the killings in Nevada, Guyette said that he would be willing to admit "this thing" if his wife would. Before questioning started on this day, he was warned that he had the right to use the phone and consult with a lawyer; the right to remain silent; and that if he did respond, his statements could be used against him. He was not told that he had the right to the presence of an attorney, either retained or appointed.
7. On April 7, Guyette was taken before the court in connection with extradition proceedings. After explanatory remarks by the Judge, Guyette waived the appointment of counsel at that time, and also signed a waiver of extradition. While being transported from court back to jail, he volunteered incriminating information to the transporting officer. So far as the trial record shows, there was no questioning at all. The officer's immediate task was to transport, not interrogate. During this trip, Guyette stated, among other things, that he didn't have anything to worry about since they didn't have the gun in Nevada, and that his wife was the only witness and she could not testify against him. These statements were received in evidence at trial.
8. By April 14, the district attorney from Churchill County, Nevada, had arrived at Elkhart, Indiana. He wished to interview Guyette. Before doing so, he told Guyette that anything he said could be used against him; that he need not say anything and could remain silent; that he had the right to an attorney; that if he wished an attorney the interview would cease. The prisoner was not told that he had the right to the presence of an attorney, either retained or appointed. Guyette said, "I want to tell you my story." He did so, and the story he told concerned his trip across Nevada. No mention was made of killing anyone, or that he had been at Briggs' Service Station on March 12. The scene now shifts to Nevada.

B. The Nevada interrogations.
1. On April 19, the sheriff met Guyette at Lovelock, Nevada, and took him by patrol car to the scene of the crime. He there questioned him, asking whether he had ever been there before, and if he had ever seen Mr. and Mrs. Briggs whose photograph was submitted to Guyette for study. He denied ever having been there, and did not recognize the persons in the photo. The record does not show that the sheriff warned Guyette of his rights before inquiring of him.
2. On April 27, at the district attorney's office, Guyette gave a statement which was recorded by longhand, typed, read by Guyette and then signed. The statement is a confession of guilt. In it he related that he got "an urge to kill, shot the man when he was in the bathroom, got scared, turned around and shot the mother." The circumstances preceding the giving of the statement are significant. Guyette had been allowed to visit with his wife alone in the district attorney's office. The visit lasted about one-half hour, after which Guyette advised the district attorney that "he wished to make a statement." He was told that he need not do so unless he had an attorney present, and that anything he said regarding the case could be used in court against him. Notwithstanding that advice, his confession followed.
3. The defendant testified at the trial. He detailed his trip through Nevada in *247 March mentioning stops and occurrences at various places. He denied the killings and denied being at Briggs' Station on March 12. Much of his tale was corroborated by other witnesses who had seen or spoken to him at those places on the dates specified. In rebuttal, the State offered still another conversation between the accused and an officer which occurred on June 14 while awaiting trial. The officer first asked whether he had been informed of his rights, to which he answered yes. During that conversation Guyette inquired about the state prison, dress, work, whether the prison had a school for barbering, etc., and stated that he was going to plead guilty. The officer told him that he had better contact his attorney, and Guyette replied that it would do no good. Guyette then confessed that he had done some crazy things, "shoplifting, now murder," and proceeded to tell the officer how and why he had killed Mr. and Mrs. Briggs.
The foregoing is a fair summary of the evidence offered, and to which the claim of constitutional error is directed.
In evaluating the sufficiency of the warnings given from time to time throughout the many interrogations we must bear in mind that Miranda had not yet been decided. Only Escobedo had been announced. There exist basic differences between the two cases. For example, Escobedo rests squarely upon the Sixth Amendment right to counsel, and Miranda upon the Fifth Amendment privilege against self-incrimination. Escobedo concerns the right to consult with retained counsel prior to interrogation. Miranda, on the other hand, speaks in terms of the presence of counsel, either retained or appointed, in order to protect the privilege against self-incrimination. There are, of course, other differences unrelated to the warning problem now confronting us.
None of the warnings given in this case satisfies Miranda. Guyette was never told that he had the right to the presence of an attorney, either retained or appointed, and to this extent, his privilege against self-incrimination was not fully protected. Notwithstanding this fact, it strikes us that warnings sufficient to protect his Sixth Amendment right to counsel as carefully delineated in Escobedo were given. From the outset, he was advised of his absolute right to remain silent, that anything he said would be used against him, and that he had the right to consult with retained counsel prior to interrogation. Those warnings were repeated from time to time, although not every time he was questioned.
The case at hand is unlike prior cases decided by this court in the wake of Escobedo. In Bean v. State, 81 Nev. 25, 398 P.2d 251 (1965), we ruled that Escobedo was inapposite since the suspect did not request the right to consult with counsel. Here, after three interrogations a request was made and, we think, honored, since the officers gave Guyette a phone book, a phone, and left the room. Guyette chose not to consult. [Cf. White v. State, 82 Nev. 304, 417 P.2d 592 (1966), where such a request was made, and the officer told the suspect that he would be given an attorney eventually. We believed such conduct to be a denial of the suspect's right to counsel.] When Guyette chose not to consult with counsel it was permissible, under the law as it then existed, to resume questioning without further warnings. Troiani v. State, 82 Nev. 357, 418 P.2d 814 (1966). In short, we find nothing in the explicit holding of Escobedo, nor in our construction of that opinion, which would render inadmissible any of the evidence received at trial in this case. The interrogators complied with the law in existence when the interrogations occurred.
The rub, of course, arises from the fortuitous circumstance that this case went to trial after Miranda was decided, and we must, as directed by Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966), apply the Miranda doctrine to our consideration of the matter. Thus, we are compelled to rule that error occurred when the trial court received in evidence the statements of the defendant which *248 do not qualify as volunteered statements. Though this be so, our careful study of the record persuades us that the error was harmless, even within the strict federal standard of harmless error as defined first in Fahy v. State of Connecticut, 375 U.S. 85, 84 S.Ct. 229, 11 L.Ed.2d 171 (1963), and as further explained by Chapman v. State of California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). We are obliged to state why we deem the error harmless within the context of this case.
Although the High Court has not yet ruled that the doctrine of harmless error may be applied to a Miranda warning violation, the drift of its opinions would suggest that the rule of harmless error may be utilized when any of the new procedural safeguards, as expressed in Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961); Griffin v. State of California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965); Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964); Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); and Gilbert v. State of California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967), are breached. We say this mainly because the constitutional doctrines of those cases were not given retrospective application, apparently for the reason that a violation may occur without necessarily affecting the fundamental fairness of the trial. Due process in the traditional sense is not necessarily denied the accused. The very integrity of the fact finding process is not necessarily infected by the violation. The reliability of the evidence received is not necessarily suspect. Hence, the rule of "automatic reversal" does not control appellate disposition.[1]
*249 In Chapman v. State of California, supra, regarding the Griffin doctrine (impermissible comment upon the defendant's failure to testify), the Court acknowledged this distinction between a violation of the procedural safeguards and a breach of substantive due process. It wrote: "We conclude that there may be some constitutional errors which in the setting of a particular case are so unimportant and insignificant that they may, consistent with the Federal Constitution, be deemed harmless, not requiring the automatic reversal of the conviction." 386 U.S. at 22, 87 S.Ct. at 827. And in Johnson v. State of New Jersey, supra, the Court wrote: "Thus while Escobedo and Miranda guard against the possibility of unreliable statements in every instance of in-custody interrogation, they encompass situations in which the danger is not necessarily as great as when the accused is subjected to overt and obvious coercion." 384 U.S. at 730, 86 S.Ct. at 1779.
California has found room for harmless error application when the doctrines of Mapp v. Ohio, supra (see People v. Parham, 60 Cal.2d 378, 384 P.2d 1001, 33 Cal. Rptr. 497 (1963)), and Griffin v. State of California, supra (see In re Gaines, 63 Cal.2d 234, 404 P.2d 473, 45 Cal. Rptr. 865 1965)), have been violated. We have heretofore acknowledged that a violation of the Fourth Amendment proscription against unreasonable searches and seizures may be harmless within a particular factual setting. Dean v. Fogliani, 81 Nev. 541, 407 P.2d 580 (1965); Dean v. Hocker, 84 Nev. ___, 436 P.2d 427 (1968). Cf. Thurlow v. State, 81 Nev. 510, 406 P.2d 918 (1965). We now rule that there is limited room for a state court to consider the rule of harmless error when the procedural safeguards of Miranda are not fully honored.
We turn, then, to articulate why we deem the procedural default (the failure to advise the defendant of his right to the presence of counsel, either retained or appointed) harmless in the context of this case. First, there is not the slightest suggestion that the statements were coerced in any manner whatsoever. The defendant testified that his confession of April 27 was voluntarily given, and did not indicate that any of his other utterances were other than voluntary. Neither at trial nor in this court did his counsel assert that the responses to interrogation were involuntary. The thrust has always been that appropriate protective warnings were not given. It seems to us that the basic test of realiability was met in this case. Second, the law in effect when the interrogations occurred was complied with. Consequently, any concern to deter unlawful police activity is not involved here. Finally, we note that perhaps the most damning evidence (the April 7 admissions and the April 27 confession) was volunteered, not in response to interrogation, and, therefore, untouched by the Miranda doctrine. State v. Billings, 84 Nev. ___, 436 P.2d 212 (1968).
Our ruling on this point comes about by reason of the peculiar circumstances of this case and is not intended to mean that a violation of the procedural safeguards of Miranda will be deemed harmless in every case. Each case must turn upon its own set of circumstances. Here, we are convinced beyond a reasonable doubt that the error did *250 not affect the result. Chapman v. California, supra.[2]
2. The claims of nonconstitutional error are not worthy of extensive treatment. It is suggested that certain black and white snapshots were inflammatory. The pictures were of a part of the building in which the homicides occurred, and of the bodies where found within the building, and, apparently, were accurate portrayals and admissible. State v. Gambetta, 66 Nev. 317, 208 P.2d 1059 (1949); Morford v. State, 80 Nev. 438, 395 P.2d 861 (1964); Archibald v. State, 77 Nev. 301, 362 P.2d 721 (1961); State v. Holt, 47 Nev. 233, 219 P. 557 (1923).
During rebuttal, the State introduced two letters written by Guyette to his wife before trial. The main contention is that the written communications were privileged and, therefore, not admissible. NRS 48.040.[3] The circumstances do not fall within the preclusion of the statute since the communications apparently were never intended, by either spouse, to be confidential. Neither letter was folded, scaled in an envelope, or otherwise arranged to suggest confidentiality. Guyette handed them to the sheriff for delivery to his wife. They were delivered. Sometime later Mrs. Guyette redelivered them to a deputy. The letters were admissible. Wolfle v. United States, 291 U.S. 754 S.Ct. 279, 78 L.Ed. 617 (1934); State v. Sysinger, 25 S.D. 110, 125 N.W. 879 (1910); People v. Hayes, 140 N.Y. 484, 35 N.E. 951, 23 L.R.A. 830 (1894); McNeill v. State, 117 Ark. 8, 173 S.W. 826, 1200 (1915).
We have considered other minor claims of error. None has substance.
The defendant is an indigent and has been represented throughout by court-appointed counsel. We commend them for their diligent service. The lower court is directed to give them the certificate specified in subsection 4 of NRS 7.260 in order that they be compensated for services on appeal.
The judgment of conviction is affirmed.
COLLINS, ZENOFF, and MOWBRAY, JJ., and O'DONNELL, D.J., concur.
NOTES
[1] Automatic reversal occurs in those cases in which substantive due process is denied the defendant: Example: 1. Coerced confession: Clewis v. State of Texas, 386 U.S. 707, 87 S.Ct. 1338, 18 L.Ed.2d 423 (1967); Davis v. State of North Carolina, 384 U.S. 737, 86 S.Ct. 1761, 16 L.Ed.2d 895 (1966); Haynes v. State of Washington, 373 U.S. 503, 83 S.Ct. 1336, 10 L.Ed.2d 513 (1963); Lynumn v. State of Illinois, 372 U.S. 528, 83 S.Ct. 917, 9 L.Ed.2d 922 (1963); Spano v. People of State of New York, 360 U.S. 315, 79 S.Ct. 1202, 3 L.Ed.2d 1265 (1959).

2. Right to counsel at trial: Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942); Doughty v. Maxwell, 376 U.S. 202, 84 S.Ct. 702, 11 L.Ed.2d 650 (1964).
3. Right to counsel at time plea is entered assuming no intelligent, knowing waiver: White v. State of Maryland, 373 U.S. 59, 83 S.Ct. 1050, 10 L.Ed.2d 193 (1963); Hamilton v. State of Alabama, 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed.2d 114 (1961).
4. Right to impartial judge: Tumey v. State of Ohio, 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927).
5. Community saturated with prejudicial pretrial publicity: Sheppard v. Maxwell, 381 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966); Estes v. State of Texas, 381 U.S. 532, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965); Rideau v. State of Louisiana, 373 U.S. 723, 83 S.Ct. 294, 9 L.Ed.2d 229 (1963); Irvin v. Dowd, 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961).
6. Discrimination in jury selection: Whitus v. State of Georgia, 385 U.S. 545, 87 S.Ct. 643, 17 L.Ed.2d 599 (1967); Eubanks v. State of Louisiana, 356 U.S. 584, 78 S.Ct. 970, 2 L.Ed.2d 991 (1958); Patton v. State of Mississippi, 332 U.S. 463, 68 S.Ct. 184, 92 L.Ed. 76 (1947); Hill v. State of Texas, 316 U.S. 400, 62 S.Ct. 1159, 86 L.Ed. 1559 (1942).
7. Right to confront witnesses and cross-examine through counsel: Pointer v. State of Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965); Douglas v. State of Alabama, 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965); Smith v. State of Illinois, 390 U.S. 129, 88 S.Ct. 748, 19 L.Ed.2d 956 (1968), decided January 29.
8. Right to compulsory process: Washington v. State of Texas, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967).
9. Prosecution's knowing use of perjured testimony: Miller v. Pate, 386 U.S. 1, 87 S.Ct. 785, 17 L.Ed.2d 690 (1967); Napue v. State of Illinois, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959).
10. Defendant incompetent to stand trial: Pate v. Robinson, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966); Bishop v. United States, 350 U.S. 961, 76 S.Ct. 440, 100 L.Ed. 835 (1956).
11. Right to impartial jury, etc.: Parker v. Gladden, 385 U.S. 363, 87 S.Ct. 468, 17 L.Ed.2d 420 (1966); Turner v. State of Louisiana, 379 U.S. 466, 85 S.Ct. 546, 13 L.Ed.2d 424 (1965).
In the following Nevada cases we automatically set aside the conviction since substantive due process was denied: Krause v. Fogliani, 82 Nev. 459, 421 P.2d 949 (1966), where accused may have been legally incompetent when he pled guilty; Messmore v. Fogliani, 82 Nev. 153, 413 P.2d 306 (1966), where there was a total preclusion of right to confront and cross-examine through counsel, a material witness against the defendant; Bundrant v. Fogliani, 82 Nev. 388, 419 P.2d 293 (1966), and Garnick v. Miller, 81 Nev. 372, 403 P.2d 850 (1965), where there was an insufficient showing that accused knowingly and intelligently waived counsel when guilty plea accepted.
[2] NRS 169.110 reads: "No judgment shall be set aside, or new trial granted, in any case on the ground of misdirection of the jury or the improper admission or rejection of evidence, or for error as to any matter or pleading or procedure, unless in the opinion of the court to which application is made, after an examination of the entire case, it shall appear that the error complained of has resulted in a miscarriage of justice, or has actually prejudiced the defendant, in respect to a substantial right."
[3] NRS 48.040 reads: "A husband cannot be examined as a witness for or against his wife without her consent, nor a wife for or against her husband without his consent; nor can either, during the marriage or afterwards, be, without the consent of the other, examined as to any communication made by one to the other during marriage. But this exception shall not apply to a civil action or proceeding by one against the other, nor to a criminal action or proceeding for a crime committed by one against the other."