NEIL PHILLIPS, APPELLANT, *v.* THE STATE OF NEVADA, RESPONDENT.

No. 6104

October 29, 1970 475 P.2d 671

[Rehearing denied November 30, 1970]

*Paul A. Bible,* of Reno, for Appellant.

*Harvey Dickerson,* Attorney General, and *Mark C. Scott, Jr.,* District Attorney, Elko County, for Respondent.

## OPINION

By the Court, ZENOFF, J.:

Neil Phillips was convicted by a jury of first degree murder and sentenced to life imprisonment without possibility of parole.

On December 26, 1968 the body of John Russell Blair was found on the mountainside at Doby Summit, Elko County, with three bullet wounds behind his ear. That same day, after a two-day session of drinking, Phillips told his brother that he had shot a man earlier that morning and dumped his body on Doby Summit. Later, he related the same to his sister-in-law and his wife, who also resided in the vicinity. His story to his wife, brother and sister-in-law was essentially the same, that while coming off his drinking bout Phillips was driving toward Elko when he noticed two men standing beside a parked car. He stopped to render aid and agreed to take one of the men, Blair, to Elko. Blair began pressing Phillips to take him to Salt Lake City, which Phillips refused to do. Blair then placed both hands on the dashboard of the truck near a knife Phillips had sitting there. When he did that Phillips reached to the floor, picked up a pistol that had once belonged to his father and shot Blair in the head three times. The bullet wounds were the cause of death but Blair had also been emasculated. Phillips further told them that he returned to awareness on the drive back to Elko alone in the car and that he then discovered he was holding fragments of testicles in his hand which he threw out of the window.

Phillips entered a plea of not guilty by reason of insanity. He did not testify at the trial nor was any other evidence introduced in his defense except the testimony of Dr. Gutsell, a psychiatrist. Although the doctor asserted that Phillips was insane, that declaration was founded only in the doctor's belief that anyone who committed such a crime "must be insane." He did not have an opinion as to whether Phillips knew the difference between right and wrong at the time of the offense. He did find that Phillips was capable of assisting in his own defense.

1. Only one issue of the three presented on this appeal

merits serious consideration. A clerical omission in one jury instruction does not bear upon the outcome. The jury could not have been confused by it because of other instructions clearly describing the burden of proof on the issue of insanity.

2. Whether sanity is an element of the crime of murder which must be proven by the state is a question that has been well-settled. Insanity is an affirmative proposition which the defendant must establish by a preponderance of proof. Gallegos v. State, 84 Nev. 608, 446 P.2d 656 (1968). Appellant is in error when he asserts that In re Winship, 397 U.S. 358 (1970), recently decided, changes that concept.

3. The third issue involves the giving of an instruction that was expressly forbidden by this court in White v. State, 82 Nev. 304, 417 P.2d 592 (1966), and relates to the only ultimate question presented by the evidence. The offensive instruction recited NRS 200.170 as follows:

"The killing of the deceased named in the indictment or information by the defendant being proved, the burden of proving circumstances of mitigation, or that justify or excuse the homicide, will devolve on the accused, unless the proof on the part of the prosecution sufficiently manifests that the crime committed only amounts to manslaughter, or that the accused was justified, or excused in committing the homicide."

That instruction given in White v. State, supra, was rejected by this court because of the confusion it inevitably creates in the minds of the jurors. As stated in White v. State, supra, it is not to be applied to determine the degree of murder, but only to decide whether the homicide was murder or man-slaughter, or was excusable or justifiable. Yet, the phrase, "circumstances in mitigation," might be interpreted to include circumstances that reduce the homicide from first degree murder to second degree murder. If the jury so interprets them, this relieves the state from the burden of proving every element of the crime beyond a reasonable doubt and shifts it to the defendant. This, of course, is impermissible. White v. State, supra.

It is error even to intimate to the jury that *any* burden of persuasion rests upon the defendant on the trial of the general issue (guilt or innocence). People v. Letourneau, 211 P.2d 865 (Cal. 1949). If the jury is instructed in the words of the statute alone, it may be misled into construing the phrase, "burden of proving the circumstances of mitigation," as

imposing upon the defendant the burden of persuasion and into believing that mitigating circumstances do not exist unless the defendant proves the existence of such circumstances upon the preponderance of such evidence. People v. Deloney, 264 P.2d 532, 538 (Cal. 1953). Because this court in White v. State, supra, emphatically directed that the words of NRS 175.235 (now NRS 200.170) should never be considered as a jury instruction in a murder trial, the ignoring of that mandate may well result in reversal. Only in rare instances do we learn that the giving of such an instruction constitutes harmless error, or is "cured." People v. Letourneau, supra.

The facts of People v. Letourneau, supra, together with an extensive explanatory instruction given by the court saved that case from reversal, but in People v. Deloney, supra, and the cases cited in White v. State, supra, the error was irretrievable. The reversal in White v. State, supra, was for constitutional error. The court was not there required to pass upon the prejudicial effect, if any, of the condemned instruction. We must now rule on that point within the context of this record.

The trial court elaborated in other instructions on the jury function of considering all of the misty factors that distinguish first degree murder from second degree murder. We also note that this is clearly not a manslaughter case and that all of the facts were presented through the testimony of the brother, wife and sister-in-law, as well as the coroner and the person who found the body on the summit. From these facts the jury was fully justified in making the finding of first degree rather than second degree murder. There was no reason for confusion from this instruction. Within the circumstances of this case the error was harmless.

In future cases if the circumstances are any less clear than those here, we would certainly feel warranted in remanding for a new trial despite the factors of time, expense and possible loss of key witnesses.

Affirmed.

COLLINS, C. J., BATJER, MOWBRAY, and THOMPSON, JJ., concur.