LOUIS ST. PIERRE, APPELLANT, *v.* THE STATE OF NEVADA, RESPONDENT.

No. 8126

December 17, 1980                    620 P.2d 1240

*David Hamilton,* Reno, for Appellant.

*Richard H. Bryan,* Attorney General, Carson City; *Calvin R. X. Dunlap,* District Attorney, and *Edward B. Horn,* Deputy District Attorney, Washoe County, for Respondent.

# OPINION

By the Court, MANOUKIAN, J.:

In this appeal, appellant seeks reversal assigning error, *inter alia*, to alleged prosecutorial and police improprieties occurring prior to as well as during trial, juror irregularities, and the severity of his sentence. Nevertheless, the single issue warranting our consideration and which impels us to order a new trial is whether the jury instruction on self-defense improperly shifted the burden of proof of an essential element of the charge of murder upon the appellant.[1] We hold that it does, and for the reasons hereinafter expressed, reverse.

Appellant, Louis St. Pierre, had, during the month prior to the instant February 16, 1974 shooting, filed a complaint with the Washoe County Sheriff's Department alleging that Sam Sutphen, Richard Swatzenberg and the decedent, Tom Whitworth, had stolen his lumber. Pursuant to his own investigation, St. Pierre discovered that the wood was located in the backyard of the Swatzenberg's residence.[2] The afternoon of February 16, appellant and a business partner, Cleve Clark, informed the Swatzenbergs that their rent would increase from $65 to $165 a month; an increase designed to force the Swatzenbergs to move.

At 5:58 p.m. on February 16, 1974, Officer Balaam of the Washoe County Sheriff's Department, arrived at the Kirkley residence in order to do a follow-up report on the reported lumber theft. Officer Balaam left the residence at 6:33 p.m. After leaving, Officer Balaam received a radio report that a shooting had occurred. Balaam immediately returned to the crime scene. During the short interval, Thomas Whitworth was shot and killed.

After Officer Balaam's initial departure at 6:33, appellant and Dale Kirkley went into the backyard of a lot neighboring the Swatzenberg residence to estimate the quantity of lumber in the yard. Richard Swatzenberg and Sam Sutphen approached from the other side of the fence and an argument over the

---

[1] During oral argument, counsel for respondent state conceded that the giving of the instruction constituted error in light of our holding in Kelso v. State, 95 Nev. 37, 588 P.2d 1035 (1979). Nevertheless, the state contends that the issue was not properly preserved for appellate review, because of the absence of a proper objection at trial.

[2] The property was occupied by Richard and Bonnie Swatzenberg, who were Thomas Whitworth's sister and brother-in-law, and by Madge Ashcraft, Whitworth's mother. The property was owned and operated by the appellant who had leased the property to the Swatzenbergs.

wood ensued. Almost simultaneously, Whitworth drove up the Swatzenberg's driveway, jumped out of his car, and ran toward the fence. Whitworth was physically restrained by Swatzenberg before reaching the fence. An argument over the rent increase began. During this argument St. Pierre fired two shots. Swatzenberg testified that the shots were fired at the outstretched hands of Whitworth. Appellant testified that the shots were fired down the fence line as warning shots, an assertion corroborated by the location of the ejected shells from the two shots. The defense maintained that the argument ended when Whitworth left the scene to seek police aid. The state contends that it ended when Whitworth left to obtain a weapon.

Shortly thereafter, the argument was resumed in the street in the front of the trailer where Whitworth was residing. During this argument, Whitworth was shot and killed. There were numerous witnesses to the incident; however, their testimony was conflicting. Two discernible patterns emerged: those who testified that Whitworth raised his hands in a surrender position and began to retreat; and those who testified that Whitworth first threatened St. Pierre and then lunged at him.

Following a protracted jury trial, appellant was found guilty of second degree murder. On appellant's motion we entered an order permitting a bifurcation of this appeal to consider the sole issue of whether the rationale of Mullaney v. Wilbur[3] renders the jury instruction on the burden of proving self-defense unconstitutional. We dismissed the remainder of the appeal without prejudice to reinstate, if appropriate.

Subsequent to our refusal to extend the *Mullaney* principle to self-defense absent more guidance from the United States Supreme Court, St. Pierre v. State, 92 Nev. 546, 554 P.2d 1126 (1976), the high court did apply the *Mullaney* rationale to affirmative defenses which negate an essential element of the charged offense. Patterson v. New York, 432 U.S. 197 (1977). In Hankerson v. North Carolina, 432 U.S. 233 (1977), the Court authorized the retroactive application of the *Patterson* rationale.

In March 1977, we ordered the reinstatement of the original appeal. Appellant now contends that in view of *Patterson* and *Hankerson,* reversal of St. Pierre's conviction is mandated. On this record, we are constrained to agree.

---

[3]Mullaney v. Wilbur, 421 U.S. 684 (1975), held unconstitutional a Maine law which required an accused to prove that he acted in the heat of passion on sudden provocation in order to reduce murder to manslaughter. The court held that the due process clause was offended because the prosecution was not required to prove each element of the charged offense beyond a reasonable doubt.

Instruction No. 16 read: "The burden of proving circumstances which justify or excuse the killing of another is upon the defendant but the defendant need not prove such circumstances beyond a reasonable doubt." This instruction is identical to that given and objected to in Kelso v. State, 95 Nev. 37, 41, 588 P.2d 1035, 1038. In both cases, the now impermissible instruction was proper under Nevada Law. In *Kelso,* we overruled our initial decision in St. Pierre v. State, 92 Nev. 546, 554 P.2d 1126, concerning the given instruction, holding that with respect to the defense of self-defense, the instruction "retains the misleading tendency to impose the burden of proof by a preponderance on the defendant," *id.* at 43, 588 P.2d at 1040. We reasoned that because self-defense is justifiable, it negates the unlawfulness element of murder. Accordingly, once the accused raises the issue of self-defense and the record contains some evidence of its existence, whatever its source, People v. McEvoy, 337 N.E.2d 437 (Ill.App. 1975), he cannot be required to shoulder the burden of proving self-defense by any standard as self-defense by its nature, disproves a fact essential to the offense. To shift the burden to the defendant "dilutes the State's own due process burden of proving, beyond a reasonable doubt, every element of the crime charged." Kelso v. State, 95 Nev. at 41, 588 P.2d at 1038, *citing* Patterson v. New York, 432 U.S. 197. Notwithstanding, we there determined that although the instruction was erroneous, it did not require reversal, because of the absence of a showing of either a miscarriage of justice or prejudice to Kelso's substantial rights.

Although respondent ably argues that the procedural default incidental to appellant's failure to object to the questioned jury instruction under the so-called "contemporaneous objection rule" constitutes a waiver of such claim, Stewart v. Warden, 94 Nev. 516, 516, 579 P.2d 1244, 1245 (1978); McCall v. State, 91 Nev. 556, 557, 540 P.2d 95, 95 (1975), *Hankerson,* through footnote, has seemingly deferred to the states the question of whether reversal is mandated.[4] In light of *Hankerson's ad hoc* approach, and the "closeness" of this case, fundamental fairness requires us to consider the question on its merits.

---

[4]"The States, if they wish, may be able to insulate past convictions by enforcing the normal and valid rule that failure to object to a jury instruction is a waiver of any claim of error." Hankerson v. North Carolina, 432 U.S. at 244, n. 8. Although we could opt to leave the enforcement of the contemporaneous objection rule open as a means of insulating past convictions from the effects of the *Mullaney* rationale, we choose not to in light of the intervening

Utilizing the "cause" and "prejudice" approach in reviewing allegations of error untimely raised, as enunciated in Wainwright v. Sykes, 433 U.S. 72 (1977) and Francis v. Henderson, 425 U.S. 536 (1976), we may, given the proper showing, consider recognized constitutional claims attendant to a procedural waiver. Recognizing that the above rule stems from habeas corpus proceedings, we nevertheless believe that the cases are persuasive authority to adopt the same standard on direct review. Accordingly, to promote judicial economy, finality, and rather than compel a defendant to seek federal habeas corpus relief, we are constrained to apply the above standard of review on direct appeals. *See* Commonwealth v. Hibler, 382 A.2d 724 (Pa. 1978); Commonwealth v. Lynch, 383 A.2d 1263 (Pa. 1978); Squire v. State of Md., 368 A.2d 1019 (Md. 1977) where other state courts reach parallel results.

"Cause" for appellant's failure to object is demonstrated by the fact that objection would have been futile as the imposition of the burden of persuasion on a defendant had been upheld by this court on prior occasions. Phillips v. State, 86 Nev. 720, 475 P.2d 671 (1970); White v. State, 82 Nev. 304, 417 P.2d 592 (1966). Moreover, on the initial appeal, this court considered the validity of the jury instruction. St. Pierre v. State, 92 Nev. 546, 554 P.2d 1126.

We find solid support for this position in cases from our own federal circuit. As the court held in United States v. Wanger, 426 F.2d 1360, (9th Cir. 1970), and we herein adopt,

> The appellant did not forfeit his rights . . . by failing to object to jury instructions which applied the law as it was firmly established . . . nor should he be penalized for his attorneys not having requested jury instructions which, at the time of trial, would have been inconsistent with the law as it then existed. *Compare* United States v. Scott, 425 F.2d 55 (9th Cir. Mr. 6, 1970).

*See also* Bean v. State, 86 Nev. 80, 465 P.2d 133 (1970). There is no requirement that a defendant or his trial counsel be clairvoyant.

---

cases and the injustice that would result should we refuse to grant reconsideration. The state argues that we should not treat the giving of the instruction as "plain error," dispensing with the requirement of a contemporaneous objection because the effect would be to "open all prior murder convictions involving self-defense to collateral attack." Even if this factor were to be considered we would not be convinced absent an intentional, voluntary and knowing relinquishment of the right. Moreover, we are not persuaded that the impact on the administration of justice in this state will be as devastating as respondent contends. *See,* for example, Kelso v. State, 95 Nev. 37, 588 P.2d 1035 (1979).

The concomitant requirement of prejudice to the defendant's substantial rights is readily demonstrable by the record. Contrary to the *Kelso* case, there is no overwhelming evidence of guilt, nor is the claim of self-defense unconvincing.

Appellant's version of self-defense is internally consistent and compatible with much of the conflicting testimony and physical evidence. At trial there was adduced evidence of the victim's prior assaultive conduct and mammoth size, especially when compared with appellant's stature. Here, St. Pierre admitted that he shot the victim, and contested only that he was not the aggressor. The state and the defense each presented a reasonable interpretation of the occurrence for jury consideration. On this record, the fact that the trial court instructed the jury of the state's burden of proving its case beyond a reasonable doubt, is of no material consequence, and we cannot hold that the burden placed on appellant by virtue of jury instruction no. 16 was not prejudicial.

In summation, the deliberate bypass standard announced in Fay v. Noia, 372 U.S. 391, 438–39, as it has been interpreted and developed by such cases as *Wainwright* and *Francis,* has played a key role in efforts by the federal judiciary to accommodate the constitutional rights of the individual with the state's interests in the integrity of their judicial procedural schemes. It should apply in the context of this unknowing procedural default, to promote the commitment to enforcing intentional but not inadvertent procedural ·defaults thereby offering a realistic measure of protection in the circumstances before this court; a result which will have little if any ill effect upon the needed finality of our criminal trials.

The remaining assignments of error are either without merit or will probably not reoccur in a similar factual context, and are therefore not considered.

Reversed and remanded.

MOWBRAY, C. J., BATJER, J., and CHRISTENSEN, D. J.,[5] concur.

GUNDERSON, J., concurring:

I concur in the result.

---

[5]The Governor designated the Honorable Carl J. Christensen, Judge of the Eighth Judicial District Court, to sit in the place of THE HONORABLE GORDON THOMPSON, Justice, who was disqualified. Nev. Const. art. 6, § 4.