**STATE of Delaware**

v.

**Billy L. RUCKER.**

Superior Court of Delaware, New Castle.

Sept. 13, 1972.

H. Murray Sawyer, Jr., Deputy Atty. Gen., for the State.

John M. Bader, of Bader, Dorsey & Kreshtool, Wilmington, for defendant.

## OPINION

CHRISTIE, Judge.

On October 3, 1971, at about 1:30 A.M., a state police officer in the course of investigating an accident, found defendant standing beside one of two cars involved. Defendant admitted he had been driving the car next to which he was standing. An odor of alcohol was detected about the defendant's breath and his clothes were disarranged. His speech slurred. One bottle of beer was found outside the car. Ten bottles of beer and a bottle of whiskey were found inside of the car. The defendant's coordination was found to be only fair to poor and he had trouble walking. He had to be leaned against the police car "so he wouldn't get out on the roadway and fall down". It was a foggy night. No coordination tests were performed at the scene; the officer wanted the defendant to get in the police car "so he wouldn't get hurt".

At the police station at 2:10 A.M. a "Mobat" breath test was administered by an officer trained and experienced in its administration. The state chemist examined the Mobat and found a reading of 0.104 indicated blood alcohol in defendant's blood. He testified in the Court of Common Pleas on cross-examination that the reading from the breath alcohol test could have a variance of as much as 0.009 from a reading based on a test of the blood so that the reading could have been anywhere from 0.095 to 0.113 if the blood rather than the breath had been tested.

At the close of the State's case, defense counsel moved to dismiss the case contending that because of the possible variance between a breath test and a blood test reasonable doubt existed as to the actual blood alcohol reading, and that an additional pos-

sible variance existed because of the passage of time between the time the defendant drove and the time when the test was taken. The State took the position that the express language of 21 Del.C. § 4176 makes conviction mandatory when the reading is 0.100 or more and it is established that defendant was driving the car. The Court of Common Pleas ruled that:

"Since there is a possibility of error that could have reduced the reading beyond the .1 presumption I will grant the Defendant the benefit of the doubt and grant the motion to dismiss the action."

The appeal by the State followed under the provisions of 10 Del.C. § 9902 which grants the State the right to appeal when a lower court dismisses an information based on the construction of a statute.

The statute prohibits the driving of a motor vehicle while under the influence of intoxicating liquor and goes on to provide in pertinent part:

"Any person who drives, operates or has in actual physical control a motor vehicle while such person's blood has reached a blood alcohol concentration of 1/10 of 1% or more, by weight, as shown by a chemical analysis of a blood, breath, or urine sample taken within 4 hours of the alleged offense, shall be guilty under this section." 21 Del.C. § 4176(a).

■ In the instant case the undisputed evidence shows: (1) the defendant was operating the car; (2) a sample of the defendant's breath was taken by an officer trained and experienced in its taking; (3) the taking was within the statutory time limit; and (4) a chemical analysis revealed as a fact a 0.104% reading of blood alcohol by weight.

The State is correct when it contends that the Court below had no choice but to apply the language of 21 Del.C. § 4176(a) and find the defendant guilty.

In the recent case of Coxe v. State, 281 A.2d 606 (Del.Supr.1971), Coxe was convicted in Superior Court of driving a motor vehicle while under the influence of alcohol. He challenged 21 Del.C. § 4176(a) as being unconstitutional in that it provided for a "conclusive presumption of guilt based upon a chemical reading". 281 A.2d at 607. The Supreme Court rejected this argument stating:

"The statute provides for no presumption of guilt, but instead provides that any person having the specified blood alcohol concentration 'shall be guilty.' To establish guilt, the State must prove only that the defendant was in physical control of the vehicle, and that a proper and timely test showed the required percentage of alcohol concentrated in the defendant's system".

In dismissing this case, the Court of Common Pleas noted that the possible discrepancy in the reading could have lowered it below the "presumption". The statute does not set up a presumption. It simply makes a blood alcohol concentration of 0.-100%, or more, as shown by specified types of tests, an element of the offense. If one has that concentration while driving, as determined by the test specified in the statute and if that test was administered within 4 hours after the alleged offense, 21 Del.C. § 4176 directs that such person "shall be guilty".

The defendant argues that the essence of the offense is having a blood alcohol level of 0.100, or more, at the time of the driving and not at the time of the test. Defendant says the State failed to prove that the required percentage existed at the time he was driving. This argument fails to recognize that the statute in question spells out what shall constitute proof of the offense.

■ Under the terms of the statute the trier of fact must determine whether the test results show the required percentage of alcohol in the blood. The trier of fact is not free to disregard the mandate of the statute or to question the wisdom of the General Assembly in providing that test re-

sults constitute proof of that element of the crime.

The possible variance in results between various types of tests and the possible variances in readings between tests taken while the accused was driving and those taken afterwards may be an inherent weakness of the statutory provisions. The General Assembly could have considered these possible variances when it enacted the legislation but the legislation is so worded as to preclude these factors from being considered as issues of fact.

If there had been evidence that the test was improperly administered, such evidence could cast such doubt on the result as could be considered by the trier of fact in determining whether the statutory requirements had been met. But, as indicated, evidence that the types of tests already approved by the General Assembly when properly conducted are still subject to possible variations in results, is not a matter which is here left to the trier of facts.

The Court of Common Pleas made an error in its interpretation of the statute and in dismissing the case. The decision must be reversed. The State is requested to submit an appropriate order.