# RANDALL WOLFE, Appellant, v. THE STATE OF NEVADA, Respondent.

### No. 10700

March 16, 1979                                              591 P.2d 1155

*Norman Y. Herring,* Nevada State Public Defender, and *J. Gregory Damm,* Chief Deputy Public Defender, for Appellant.

*Steven D. McMorris,* District Attorney, and *Brent Kolvet,* Deputy District Attorney, Douglas County, for Respondent.

## OPINION

By the Court, THOMPSON, J.:

A jury convicted Randall Wolfe of the crime of prisoner escape. He had elected to represent himself with the aid of the public defender as his advisor. At arraignment the district

court ordered that Wolfe be allowed to use the law library at the prison to prepare for trial. Should he not be permitted to do so the court was to be advised. On the day trial was to commence Wolfe moved to dismiss asserting that he had been denied access to the library, and to a telephone. The court denied that motion, and trial occurred.

His defense was that of limited necessity, and the court instructed the jury regarding the elements of that defense. The instruction was based upon the California Court of Appeals decision, People v. Lovercamp, 43 Cal.App.3rd 823, 118 Cal.Rptr. 110 (1975), allowing the defense when: (1) the prisoner is faced with a specific threat of death, forcible sexual attack or substantial bodily injury in the immediate future; (2) there is no time for a complaint to the authorities or there exists a history of futile complaints which make any result from such complaints illusory; (3) there is no time or opportunity to resort to the courts; (4) there is no evidence of force or violence used towards prison personnel or other "innocent" persons in the escape; and (5) the prisoner immediately reports to the proper authorities when he has attained a position of safety from the immediate threat.[1]

Capsulized, it was Wolfe's testimony at trial that sometime before his escape he had been knifed by a black prisoner and hospitalized for his wounds; that thereafter he was in fear for his life and that while on a work crew for the division of forestry he was threatened by a friend of the black inmate who had stabbed him, prompting his decision to escape. When he had obtained a position of safety from the threat he did not immediately notify the authorities of his whereabouts. Sometime later he voluntarily surrendered himself to custody.

His testimony was corroborated to some extent by other evidence, particularly with reference to the stabbing and his consequent hospitalization.

On this appeal he does not contend that he was somehow precluded from securing and submitting all evidence relevant to his defense, or that his legal advisor was inattentive or ineffective. He asserts simply that his lack of access to the prison library denied him a fair trial and requires an automatic reversal of his conviction and a remand for another trial.

1. The Sixth Amendment, applicable to the states by the Fourteenth Amendment, guarantees that a defendant in a state criminal trial has the constitutional right to defend himself

---

[1]People v. Lovercamp, supra, is the lead case for the Annot. 69 ALR3d 678 (1976) entitled, "Duress, Necessity, or Conditions of Confinement as Justification for Escape from Prison."

without counsel when he voluntarily and intelligently elects to do so. Faretta v. California, 422 U.S. 806 (1975). Moreover, due process demands that prisoners have access to the courts, which requires prison authorities to assist in the preparation and filing of meaningful legal papers by providing them with adequate law libraries or adequate assistance from persons trained in the law. Bounds v. Smith, 430 U.S. 817 (1977); Craig v. Hocker, 405 F.Supp. 656 (D. Nev. 1975).

Wolfe's assertion that he was denied access to the prison law library has not been controverted by the state. Therefore, we accept that assertion of fact as true. Whether such constitutional violation compels this court to annul his conviction is the issue to which we now direct our attention.

2. Not every constitutional violation requires that the conviction be set aside. Some violations may occur without necessarily affecting the fundamental fairness of the trial.[2] If we are convinced beyond a reasonable doubt that the error did not affect the result of the trial (Fahy v. Connecticut, 375 U.S. 85 (1963); Chapman v. California, 386 U.S. 18 (1967)) we may deem the error harmless and sustain the jury verdict and judgment entered thereon.[3]

In the factual setting of this case, we are convinced beyond a reasonable doubt that denial of access to the prison law library could not have affected the result of the trial. All evidence relevant to his escape from custody was presented to the jury for its evaluation. The appellant does not contend otherwise. The law bearing upon his defense to the charge of escape, and stated in jury instruction, is not challenged as incorrect. It is not claimed that the integrity of the fact finding process was impaired, or the reliability of the evidence received rendered suspect by reason of his exclusion from the prison law library.

Affirmed.

MOWBRAY, C. J., and GUNDERSON, MANOUKIAN, and BATJER, JJ., concur.

---

[2]This problem was discussed in Guyette v. State, 84 Nev. 160, 166, 167, 168, 438 P.2d 244 (1968).

[3]In Chapman v. California, supra, the court wrote:

"We conclude that there may be some constitutional errors which in the setting of a particular case are so unimportant and insignificant that they may, consistant with the Federal Constitution, be deemed harmless, not requiring the automatic reversal of the conviction."
386 U.S. at 22.