STEVEN MICHAEL DIAS, Appellant, v. THE STATE OF NEVADA, Respondent.

No. 10386

October 29, 1979          601 P.2d 706

*William N. Dunseath,* Public Defender, and *Michael B. McDonald,* Deputy Public Defender, Washoe County, for Appellant.

*Richard H. Bryan,* Attorney General, Carson City; *Calvin R. X. Dunlap,* District Attorney, and *John L. Conner,* Deputy District Attorney, Washoe County, for Respondent.

## OPINION

*Per Curiam:*

Convicted by jury verdict of burglary (NRS 205.060) and petit larceny (NRS 205.240), Steven Michael Dias contends we

must reverse because he was denied his Sixth Amendment right of confrontation when hearsay evidence regarding his identification as the perpetrator of the charged crimes was admitted at his trial.

The charges arise out of the ransacking of a jewelry shop in Reno. The shop was protected by a silent alarm system which could be activated by the breaking of a display window. The alarm was activated at approximately 3:18 a.m. on June 25, 1977, and police officers arrived at the scene within minutes. Robert Reynolds, one of the first officers to arrive at the scene, saw that the shop window had been broken. Reynolds also noted the presence of bloodstains on some of the broken glass in and around the smashed window.

After his arrival, officer Reynolds was approached by a bystander who volunteered a description of the man she had seen breaking into the shop. The bystander told Reynolds that she had seen the man go into a bar located two doors east of the jewelry shop. Reynolds then entered the bar looking for a "Negro male adult in his twenties, late teens—early twenties, about six feet, six one, heavy build, wearing dark blue clothing and white tennis shoes." There Dias was found, the only black man present, wearing a dark blue jacket, blue jeans, and white tennis shoes. He had a fresh laceration on his forehead.[1]

Officer Reynolds approached Dias and inquired about his injury. After listening to Dias' explanation, Reynolds asked Dias to step outside, where he was arrested. Subsequently, a booking search conducted at the police station revealed two jewelry items in Dias' possession which were identified as missing from the burglarized store.

A witness who observed the crimes being committed testified at the trial that the perpetrator was a black male who was wearing blue denim clothing and white shoes. Officer Reynolds also related at trial that when he stepped outside of the bar with Dias, several bystanders identified Dias as the man they had seen committing the crimes. Reynolds' testimony regarding this identification was admitted over appellant's hearsay objection.[2]

---

[1] An investigator later found a bloody washbasin and several discarded towels bearing what appeared to be bloodstains in the men's restroom of the bar. At the trial, the bartender testified that Dias asked her for some towels after he entered the bar and that he also asked her to say, in the event she was asked, that he had been in the bar all night.

[2] The testimony is as follows:

After listening to his story, we asked him [Dias] outside, told him there was some people who wanted to take a look at him, that he was a suspect in a burglary. He accompanied us outside.

We put him—we took him outside, put him up against the wall and searched

Appellant reasserts his hearsay objection here and also raises, for the first time, an objection to the testimony based on the Confrontation Clause of the Sixth Amendment of the United States Constitution.

The State asserts that appellant is precluded from raising the constitutional issue for the first time on appeal. We have held that, while the general rule is that failure to object at trial will ordinarily bar review of an issue, when constitutional questions are raised this court has the power to address them. Hardison v. State, 84 Nev. 125, 128, 437 P.2d 868, 870 (1968). In this case, however, an objection to the testimony now challenged on appeal was, in fact, made on the ground that it violated the hearsay rule.

Whether the confrontation clause is a substantive restraint upon the power of the state and federal governments to prescribe rules of evidence admitting hearsay testimony, *see* California v. Green, 399 U.S. 149, 179 (1970) (Harlan, J., concurring), or merely a requirement that a cross-examining procedure be used in taking the testimony of witnesses who

---

him for weapons. Finding none, we had the witnesses identify him, which they did.

Q:  You observed witnesses identify him?

A:  Yes, I did.

Q:  And they were identifying him as the person who—

DEFENSE COUNSEL:  I object. That's hearsay also.

PROSECUTOR:  Your Honor, the fact of his observation of the identification is not hearsay, only that he observed it.

DEFENSE COUNSEL:  I don't think so, your Honor. What Mr. Nomura is saying is that he saw some person look at Mr. Dias and say, "That's the man that I saw break the window," and that's obviously hearsay, whether they said anything or not.

PROSECUTOR:  Your Honor, he's only testifying as to his subsequent actions as to his arrest and all he's doing is observing the situation. He's not doing anything as far as hearsay is concerned.

We're not offering any statements in this case, no assertion of conduct or anything like that, only his observation.

DEFENSE COUNSEL:  It's assertive conduct, your Honor, and his statement—if he wants to bring somebody in that can identify Mr. Dias, he should.

PROSECUTOR:  Your Honor, there will be testimony that will do that. However, I just wanted to indicate to the Court that his testimony is limited only to the observation of what he saw.

THE COURT:  I'll let him characterize it as far as the identification. I suppose to ask him what the individuals said particularly would be hearsay.

PROSECUTOR:  Yes, I agree with that, your Honor.

THE COURT:  All right.

BY PROSECUTOR:

Q:  So, Officer Reynolds, you observed some identification take place?

A:  Yes, sir, I did.

actually appear at trial, *see* Dutton v. Evans, 400 U.S. 74, 94 (1970) (Harlan, J., concurring in the result), we need not decide. Under either theory, the confrontation clause clearly embodies the policy favoring the use of cross-examination as the most effective method of determining the truth, and thus a necessary protection to the accused in a criminal trial. Pointer v. Texas, 380 U.S. 400, 404 (1965). When a hearsay objection is lodged, as here, on the grounds that the declarant has not been made available at trial and, as a result, cannot be subjected to cross-examination, the policy of the confrontation clause is invoked equally with that of the hearsay rule. We therefore hold that the hearsay objection lodged in the instant case adequately preserved the confrontation clause issue for review.

We need not, however, reach the substance of the constitutional claim presented in this case, nor differentiate it from cases, such as Bruton v. United States, 391 U.S. 123 (1968), in which a codefendant's absolute right to refuse to testify rendered hearsay testimony as to his confession inadmissible under the confrontation clause. Our review of the record reveals that defense counsel not only did not object to the arresting officer's initial testimony concerning the description of the suspect given by the eyewitnesses at the scene of the crime, but on cross-examination brought out, in substantially greater detail than in the testimony actually objected to, both the fact of appellant's identification and the statements made by the bystanders.[3] No motion to strike this testimony was made and no cautionary instruction was requested. Whatever rights appellant might arguably have had under the confrontation clause were thus waived by the tactics of defense counsel.

Even were we to find that it was error to admit the part of the officer's testimony to which counsel actually did object, we should be constrained to hold that, under the circumstances of this case, the error was harmless beyond a reasonable doubt. The circumstantial evidence of guilt and the testimony of an eyewitness who identified appellant at the scene by his clothing

---

[3]The cross-examination by defense counsel was as follows:

Q: [DEFENSE COUNSEL] Was he [an eyewitness] one of the individuals who gave the positive I.D. of Mr. Dias as the one who did it?

A: I believe the only positive I.D. that I can recall and somebody saying, "Yes, I'm absolutely positive that's him," was Miss Young. Everybody else said, "Yeah, that looks like the one."

DEFENSE COUNSEL: That's all.

and appearance—a permissible means of identification under Matthews v. State, 94 Nev. 179, 576 P.2d 1125 (1978)—combined with the testimony of the officer on cross-examination, convince us beyond a reasonable doubt that the constitutional error, if any, did not affect the result. Schneble v. Florida, 405 U.S. 427 (1972); Fahy v. Connecticut, 375 U.S. 85 (1963); Wolfe v. State, 95 Nev. 240, 591 P.2d 1155 (1979). *A fortiori,* admission of the testimony over appellant's objection based on the hearsay rule, which we review on the less strict standard applicable to non-constitutional error, Cosey v. State, 93 Nev. 352, 566 P.2d 83 (1977); *see* State v. Jon, 46 Nev. 418, 430, 211 P. 676, 679 (1923), does not constitute reversible error.

We note that respondent was granted thirteen extensions of time to file its answering brief, which was ultimately filed three days after the expiration of its last extension and over a year after the filing of appellant's opening brief. Although we have discretion to treat noncompliance with filing requirements as a confession of error, NRAP 31(c); Kitchen Factors, Inc. v. Brown, 91 Nev. 308, 535 P.2d 677 (1975); *see* Toiyabe Supply Co. v. Arcade, 74 Nev. 314, 330 P.2d 121 (1958), since no prejudice to appellant appears, we confine ourselves to expressing our strong disapproval of such dilatory conduct.

The judgment is affirmed.