597 So.2d 767 (1991)
Jessie Lee MILLER, Petitioner,
v.
STATE of Florida, Respondent.
No. 75708.
Supreme Court of Florida.
September 26, 1991.
Rehearing Denied March 19, 1992.
*768 Perry M. Adair of Bender, Bender, Chandler & Adair, P.A., Homestead, for petitioner.
Robert A. Butterworth, Atty. Gen. and Michael J. Neimand, Asst. Atty. Gen., Miami, for respondent.
PER CURIAM.
We have for review State v. Miller, 555 So.2d 391 (Fla. 3d DCA 1989), which certified the following question of great public importance:
Whether the numerical result of the blood alcohol test taken [an hour and twenty minutes] after the defendant's last operation of a motor vehicle is admissible evidence where the state's expert witness would testify that the numerical reading would not be the BAL [blood-alcohol level] at the time the defendant was operating the vehicle, where that witness was unable to testify what the defendant's BAL was at the time he was operating the vehicle, and where the witness testified that the BAL could have been lower than .10% at the time the defendant operated the vehicle.
Id. at 392, 394. We have jurisdiction. Art. V, § 3(b)(4), Fla. Const. We answer in the affirmative.
Jessie Lee Miller was charged with DUI and other driving offenses. One hour and twenty minutes after being stopped, he was given a chemical breath test that registered a blood-alcohol level of 0.14 Miller exercised his constitutional rights and refused to tell police when he had consumed his last alcoholic beverage.
The state's expert toxicologist stated in a deposition that, because of this refusal, it was impossible to determine with reasonable certainty Miller's blood-alcohol level at the time Miller was driving the car. This is because alcohol is not completely absorbed into the system immediately upon being consumed. Some portion of recently ingested alcohol will remain in the stomach. Thus, the blood-alcohol level may rise over time as this alcohol is absorbed. The expert said it was scientifically possible the blood-alcohol level was below the legal limit of 0.10 at the time Miller was driving. This particularly could have been true if Miller had consumed alcoholic beverages immediately prior to driving, or while operating, the vehicle.
Based on these statements, Miller's counsel filed a motion to suppress the results of the test on grounds of irrelevance and prejudice. The trial court granted the motion and certified a question to the Third District.
The Third District relied on section 316.1934(2), Florida Statutes (1987), to reverse the trial court. In pertinent part, the statute provides:
Upon the trial of any civil or criminal action or proceeding arising out of acts alleged to have been committed by any person while driving, or in actual physical control of, a vehicle while under the influence of alcoholic beverages or controlled substances, when affected to the *769 extent that his normal faculties were impaired or to the extent that he was deprived of full possession of his normal faculties, the results of any test administered in accordance with s. 316.1932 or s. 316.1933 and this section shall be admissible into evidence when otherwise admissible... .
(Emphasis added.) The court below concluded that "[i]t is noncompliance with these proper testing procedures [required by sections 316.1932 and 316.1933] which would render test results inadmissible." Miller, 555 So.2d at 393.
The district court also relied on the policy elaborated by courts in other states that persons are not privileged to "race" from one place to another before the blood-alcohol level rises above the legal limit. E.g., State v. Tischio, 527 A.2d 388 (N.J. 1987), appeal dismissed, 484 U.S. 1038, 108 S.Ct. 768, 98 L.Ed.2d 855 (1988). The district court concluded that any doubts as to Miller's blood-alcohol level at the time of arrest went to the weight or credibility of the evidence, not its admissibility, and reversed the trial court's suppression of the blood-alcohol evidence. The district court then certified the same question it had received from the trial court. Miller, 555 So.2d at 394.
Initially, we must disagree with the suggestion made by the district court that the admissibility of blood-alcohol test evidence is determined solely by reference to sections 316.1932 and 316.1933, Florida Statutes (1987). This evidence continues to be subject to all other applicable precedent and rules regarding the admissibility of evidence.
However, it is equally clear that, at least in some circumstances, evidence of blood-alcohol content obtained a significant time after a person is stopped on suspicion of driving under the influence may be relevant and probative evidence. Under the Florida Evidence Code, evidence is relevant and therefore admissible if it tends to prove or disprove a material fact, sections 90.401-.402, Florida Statutes (1987), provided the probative value of that evidence outweighs the potential prejudice or confusion it may cause. § 90.403, Fla. Stat. (1987). We have described "relevancy" as a broad, malleable concept that may involve many different inquiries to determine whether evidence tends to prove or disprove a material fact. Garcia v. State, 564 So.2d 124 (Fla. 1990). Clearly, there are circumstances under which evidence of blood-alcohol content would be relevant and probative even though a significant amount of time has passed after the defendant was stopped and even where the state cannot establish probable blood-alcohol content at the time the defendant was in control of a vehicle.
However, American courts have shown some division on exactly what line separates the relevant and probative from the irrelevant or nonprobative. Two broad approaches have developed.
The weight of authority is exemplified by State v. Kubik, 235 Neb. 612, 456 N.W.2d 487 (1990). In Kubik, the Nebraska Supreme Court held that the numerical blood-alcohol content was admissible evidence if obtained within a reasonable time after the defendant was stopped, even if the state cannot provide a scientific basis for extrapolating the blood-alcohol content back to the time when the defendant was operating a vehicle. The Kubik Court determined that the inability of the state to "relate back" was a question of credibility or the weight of the evidence, not admissibility, and that evidence of blood-alcohol content thus was admissible provided an unreasonable amount of time had not elapsed until the test was taken.
The other line of cases is exemplified by Desmond v. Superior Court, 161 Ariz. 522, 779 P.2d 1261 (1989). In that case, the Arizona Supreme Court held that the inability to "relate back" a defendant's blood-alcohol content rendered the numerical reading of the test inadmissible because of its potential unreliability. However, the state still would be entitled to introduce evidence showing that, at the time the test was taken, the defendant tested positive for alcohol, provided the trial court gave a cautionary instruction. This instruction must inform the jury that the evidence of *770 the presence of blood alcohol is admitted for the limited purpose of showing that the defendant had alcohol in the blood at the time the test was taken and that such evidence standing alone is not sufficient to show either that the defendant was impaired or had an unlawful blood-alcohol level at the time a vehicle was being operated.
While we see merit in both of the approaches above, we believe that the spirit underlying Florida's drunk-driving laws as well as practical considerations favor the approach taken in Kubik. In other words, the inability of the State to "relate back" blood-alcohol evidence to the time the defendant was driving a vehicle is a question of credibility and weight-of-the-evidence, not of admissibility, provided the test is conducted within a reasonable time after the defendant is stopped.
What is "reasonable" in this context will depend upon the facts of each case. As a general rule, we believe a test is conducted at an unreasonable time if the results of that test do not tend to prove or disprove a material fact, or if the probative value of the evidence is outweighed by its potential to cause prejudice or confusion. In the present case, the totality of the facts indicate that Miller's blood-alcohol test was neither conducted after an unreasonable lapse of time nor was its probative value outweighed by the potential for prejudice or confusion. Accordingly, the trial court erred as a matter of law in removing the question from the jury.
For the reasons expressed above, we approve the opinion below, except as noted in this opinion, and remand the case for further proceedings.
It is so ordered.
SHAW, C.J., and OVERTON, McDONALD and GRIMES, JJ., concur.
KOGAN, J., concurs specially with an opinion, in which BARKETT, J., concurs.
BARKETT, J., concurs in result only.
KOGAN, Justice, specially concurring.
While I concur with the majority's analysis as far as it goes, I do so subject to the reservations expressed in my partial dissent in Haas v. State, 597 So.2d 770 (Fla. 1992) (Kogan, J., concurring in part, dissenting in part). I agree that tests conducted on a blood sample taken within a reasonable time are admissible evidence, under the terms noted by the majority. However, I also find that the State remains subject to the requirement of proving beyond a reasonable doubt every element of the offense. U.S. Const.Amend. XIV; art. I, § 9, Fla. Const.
In the case at hand, the trial court would be obliged to direct a verdict of not guilty if the only evidence against Miller is the expert toxicologist's testimony. This is because the expert stated that Miller's blood-alcohol level scientifically may have been below the legal limit at the time he was driving the car. Such testimony creates reasonable doubt that would preclude a conviction unless there is other credible evidence to meet the State's burden. If this other evidence does not exist on the record, the trial court would have no choice but to direct a judgment of acquittal upon a proper motion. Admissibility, in other words, is a question entirely distinct from the due process requirement of proof beyond a reasonable doubt.
BARKETT, J., concurs.