GREGORY BEN SEREIKA, Appellant, v. THE STATE OF NEVADA, Respondent.

No. 28826

February 26, 1998                                           955 P.2d 175

*William G. Rogers,* Carson City, for Appellant.

*Frankie Sue Del Papa,* Attorney General; *Noel S. Waters,* District Attorney and *John C. Eck,* Deputy District Attorney, Carson City, for Respondent.

## OPINION

*Per Curiam:*

Gregory Ben Sereika was convicted of driving under the influence of intoxicating liquor pursuant to NRS 484.379(1)(c), which prohibits blood alcohol levels of .10 or more within two hours after driving a motor vehicle.[1] Sereika appeals his conviction, arguing that NRS 484.379(1)(c) is unconstitutionally vague and overbroad. We conclude that his arguments lack merit, and affirm the conviction.

Sereika drove his motorcycle to the Carson Nugget on the night of June 2, 1995, where he consumed four alcoholic drinks. Sereika was involved in an accident on his way home, failed a series of field sobriety tests shortly thereafter, and was arrested for driving under the influence of intoxicating liquor. Sereika was given two breath tests at the police station, and his blood alcohol level was measured at .15 and .16, respectively.

Sereika stood trial for driving under the influence of intoxicating liquor in violation of NRS 484.379. The State's DUI expert conceded on cross-examination that alcohol in the stomach is usually absorbed into the system within a half-hour to an hour period following ingestion. Sereika did not object to the jury instruction on the requirements for conviction under NRS 484.379. The jury returned a guilty verdict; however, it based its verdict solely on the theory that Sereika had a blood alcohol level of .10 or higher within two hours after driving a vehicle, which is a sufficient basis for conviction under NRS 484.379(1)(c). A judgment of conviction was entered on May 28, 1996, from which Sereika now appeals.

Sereika challenges the provision of NRS 484.379 that allows conviction based on a finding that the defendant's blood alcohol level was .10 or higher within two hours after driving a vehicle, arguing that the provision is unconstitutionally vague and over-broad. The State urges this court to deny Sereika's appeal because he did not object to the jury instruction on NRS 484.379, which included the challenged provision. This court may consider constitutional challenges on appeal despite an appellant's failure to make timely objections at trial, and has often elected to consider such appeals. *See, e.g.,* Geary v. State, 112 Nev. 1434, 930 P.2d 719 (1996); Lord v. State, 107 Nev. 28, 806 P.2d 548 (1991); Jones v. State, 101 Nev. 573, 707 P.2d 1128 (1985); McCullough

---

[1]Blood alcohol level is expressed as the percentage of blood weight attributable to alcohol.

v. State, 99 Nev. 72, 657 P.2d 1157 (1983); Dias v. State, 95 Nev. 710, 601 P.2d 706 (1979).

Consideration of Sereika's appeal comports with precedent, as "[w]e have previously recognized the futility of objecting to an instruction whose validity has been consistently upheld." *Jones,* 101 Nev. at 576, 707 P.2d at 1130. The reasoning in *Jones* stems from our earlier reliance on federal authority to excuse failure to request jury instructions "which, at the time of . . . trial, would have been inconsistent with the law as it then existed." St. Pierre v. State, 96 Nev. 887, 892, 620 P.2d 1240, 1243 (1980) (quoting United States v. Wanger, 426 F.2d 1360 (9th Cir. 1970)). We conclude that this reasoning is directly applicable in the instant case, as it would have been futile for Sereika to object to an instruction that merely recited the requirements for conviction under the applicable statute.

Sereika's challenge to NRS 484.379(1)(c) relates to the textual provisions of the statute rather than to the manner in which it has been enforced, limiting the issue before us to whether the statute is facially unconstitutional due to vagueness or overbreadth. We will only consider the specific arguments raised by Sereika, as "statutes are presumed to be valid, and the burden is on the challenger to make a clear showing of their unconstitutionality." Childs v. State, 107 Nev. 584, 587, 816 P.2d 1079, 1081 (1991). To meet this burden, there must be a "clear showing of invalidity." Sheriff v. Martin, 99 Nev. 336, 340, 662 P.2d 634, 637 (1983). When ambiguities arise, "statutes should be construed, if reasonably possible, so as to be in harmony with the Constitution." Glusman v. State, 98 Nev. 412, 419, 651 P.2d 639, 644 (1982).

*Vagueness*

We have articulated a clear standard for vagueness challenges. The test for vagueness is whether the terms of the statute are "so vague that people of common intelligence must necessarily guess as to [their] meaning." Cunningham v. State, 109 Nev. 569, 570, 855 P.2d 125, 125 (1993). This rule comports with the federal standard that a statute is unconstitutionally vague if it fails "to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute." United States v. Harriss, 347 U.S. 612, 617 (1954).

We conclude that NRS 484.379(1)(c) is not unconstitutionally vague. The challenged section provides that it is unlawful for any person who

[i]s found by measurement within 2 hours after driving or being in actual physical control of a vehicle to have 0.10 or more by weight of alcohol in his blood[] to drive or be in actual physical control of a vehicle on a highway or on premises to which the public has access.

This statutory language is very specific, and Sereika does not suggest any alternative interpretations as evidence of vagueness. Sereika contends that ordinary persons will be unable to anticipate their blood alcohol level two hours after driving; however, he provides no evidence that such forecasting is any more difficult than knowing if their blood alcohol level has crossed the .10 threshold at the time of driving. Sereika's conclusory assertion that the clear language of NRS 484.379(1)(c) is vague is not sufficient to meet the burden for a constitutional challenge.

## Overbreadth

Sereika's overbreadth challenge is based on two distinct arguments; however, each argument concerns circumstances under which a defendant could be guilty under the law without having driven with a blood alcohol level at or exceeding .10. The first such circumstance involves what Sereika refers to as "the rising blood alcohol defense." This defense employs the argument that, although the defendant exceeded the legal blood alcohol limit at the time of the test, the alcohol was still in the defendant's stomach at the time of the alleged infraction. The second circumstance arises when the defendant does not ingest the alcohol until *after* driving, but reaches the prohibited level of blood alcohol within the critical two-hour period.

Sereika's rising blood alcohol defense is clearly his strongest basis for asserting that NRS 484.379(1)(c) is overinclusive. However, his argument fails to address the effects of recent amendments to NRS 484.379(1) following the Ninth Circuit Court of Appeal's opinion in McLean v. Moran, 963 F.2d 1306 (9th Cir. 1992). In *McLean,* the Ninth Circuit addressed an overbreadth challenge to NRS 484.379(1)[2] and NRS 484.381(1)[3] as they were

---

[2]At the time of McLean's appeal, NRS 484.379(1) read:

It is unlawful for any person who:
    (a) Is under the influence of intoxicating liquor; or
    (b) Has 0.10 percent or more by weight of alcohol in his blood, to drive or be in actual physical control of a vehicle on a highway or on premises to which the public has access.

[3]At the time of McLean's appeal, NRS 484.381(1) read:

In any criminal prosecution for a violation of NRS 484.379 or 484.3705 in which it is alleged that the defendant was driving or in actual physical control of a vehicle while he had 0.10 percent or more

formulated at that time. NRS 484.379(1)(c) was not then in effect; however, NRS 484.381(1) created a *presumption* that the defendant's blood alcohol level at the time of driving was the same as at the time of testing. The *McLean* court found that the district court treated the presumption as mandatory and conclusive, and that it was, therefore, unconstitutional as applied. *Id.* at 1310. The court concluded that "McLean's constitutional right to have the State prove every element of the crime beyond a reasonable doubt was violated by the conclusive presumption applied by the judge." *Id.*

In response to *McLean,* the Nevada Legislature amended its statutory scheme to remove the contested presumption, repealing NRS 484.381 and adopting NRS 484.379(1)(c).[4] Although the effect of the new scheme is similar, the legal implications are very different. Instead of using the defendant's blood alcohol level at the time of testing to infer the level at the time of driving, NRS 484.379(1)(c) simply makes it *per se* unlawful to have a blood alcohol level of .10 or more within two hours after driving. Because this change removed the presumption of an element that the State would otherwise be required to prove, it remedied the defect condemned in *McLean.*

Sereika misapprehends the critical issues involved in his appeal. His principle contention is that the "statute sweeps unnecessarily broadly into activity which has not been declared unlawful in this state, that is, operating a motor vehicle with a blood alcohol level below .10 percent." This logic is predicated on the misconception that the prohibition against a blood alcohol

---

by weight of alcohol in his blood, *the amount of alcohol shown by a chemical analysis of his blood,* urine, breath or other bodily substance *is presumed to be no less than the amount present at the time of the alleged violation.*

(Emphasis added.)

[4]Sereika's only case supporting his contention that NRS 484.379(1)(c) is overbroad originated in Pennsylvania: Commonwealth v. Barud, 681 A.2d 162 (Pa. 1996). In *Barud,* the Pennsylvania Supreme Court struck down a statutory provision closely analogous to NRS 484.379(1)(c), although the statute in *Barud* prohibited a blood alcohol level of .10 or more within *three* hours after having driven. Sereika's arguments in this appeal closely mirror the *Barud* court's rationale. We disapprove of the *Barud* court's failure to consider any conceivable rational basis for the statute other than to create a conclusive presumption that the defendant had a blood alcohol level of .10 or more at the time of driving. Rational basis review requires an additional measure of speculation regarding legislative purpose, as discussed *infra.* The legislative trend evidenced by other states' enactments also bears consideration. Many other states, including Alaska, Delaware, Florida, and North Dakota, have enacted and upheld provisions similar to NRS 484.379(1)(c). *See* Erickson v. Municipality of Anchorage, 662 P.2d 963 (Alaska Ct. App. 1983); State v. Rucker, 297 A.2d 400 (Del. Super. Ct. 1972); Haas v. State, 597 So. 2d 770 (Fla. 1992); Wolf v. ND Highway Com'r, 458 N.W.2d 327 (N.D. 1990).

level of .10 or more within two hours after driving is based on an inference that the defendant must have had a blood alcohol level of .10 or more at the time of driving. Because such an inference would presumably be faulty in cases where the defendant had ingested but not yet absorbed the alcohol at the time of driving, Sereika contends that the statute is overbroad. Indeed, Sereika would be correct under the rule of *McLean* if the statutory scheme at issue had not been amended pursuant to that ruling.[5]

Because the new statutory scheme does not utilize a presumption to impose liability, Sereika's argument misses the present constitutional issue. Under the current scheme, a defendant's blood alcohol level at the time of driving is simply irrelevant to his violation of NRS 484.379(1)(c). Accordingly, the critical question is not the possible overbreadth of a presumption that anyone with a blood alcohol level of .10 or more within two hours after driving also had a similar level at the time of driving. Rather, the issue is whether the United States and Nevada Constitutions prevent direct legislative prohibition of a blood alcohol level of .10 or more within two hours after driving.

Although Sereika does not invoke any specific constitutional provisions to support his overbreadth claim, challenges to statutes enacted pursuant to the legislature's general economic and social welfare regulatory powers generally fall under the framework of substantive due process or equal protection. *See* 2 Ronald D. Rotunda & John E. Nowak, *Treatise on Constitutional Law: Substance and Procedure* § 15.4, at 389-412 (2d ed. 1992). Because Sereika does not claim to have suffered any impingement of a fundamental right or to have been subjected to any suspect classification or invidious discrimination, the statute at issue is not subject to the heightened forms of scrutiny developed for such circumstances. The United States Supreme Court has held that "[u]nless a statute provokes 'strict judicial scrutiny' because it interferes with a 'fundamental right' or discriminates against a 'suspect class,' it will ordinarily survive an equal protection attack so long as the challenged classification is rationally related to a legitimate governmental purpose." Kadrmas v. Dickenson Pub. Sch., 487 U.S. 450, 457-58 (1988) (citations omitted).

---

[5]Our concurring colleague also posits an element of presumption in the current statutory scheme, as he opines that "subsection (c) of this statute alone can [not] be relied upon to establish guilt beyond a reasonable doubt." In fact, as explained below, such reliance would involve the unnecessary and improper conclusive presumption that violation of subsection (c) demonstrates intoxication at the time of driving. Under the current statutory scheme, the State need only prove, beyond a reasonable doubt, that subsection (c) was violated. Violation of subsection (c) is a crime; a defendant may be convicted under that provision without the State having to use the violation of subsection (c) as evidence that the defendant violated some other statutory provision.

Similarly, the Court has held that a due process challenge requires only minimum scrutiny in the absence of a suspect classification or impingement on fundamental rights. Bowen v. Gillard, 483 U.S. 587 (1987). Nevada cases are in accord, as we held that where "no 'fundamental right' or 'suspect classification' is implicated, this court 'scrutiniz[es] the challenged legislation for foundational support containing an ingredient of rational basis.' " Barrett v. Baird, 111 Nev. 1496, 1509, 908 P.2d 689, 698 (1995) (quoting Allen v. State Pub. Emp. Ret. Bd., 100 Nev. 130, 136, 676 P.2d 792, 795-96 (1984)).

The scrutiny involved is indeed minimal, as "the due process clause can be thought to interpose a bar only if the statute manifests a patently arbitrary classification, utterly lacking in rational justification." Flemming v. Nestor, 363 U.S. 603, 611 (1960). "The day is gone when this court uses the Due Process Clause of the Fourteenth Amendment to strike down state laws . . . because they may be unwise, improvident, or out of harmony with a particular school of thought." Williamson v. Lee Optical of Oklahoma, 348 U.S. 483, 488 (1955).

---

Under rational basis review, courts are not limited to consideration of the justifications actually asserted by the legislature. Instead, the United States Supreme Court has upheld statutes when it has been able to infer any conceivable rational basis for their enactment. See, e.g., Williamson, 348 U.S. 483. This court has also determined that "[i]t is well settled under rational basis scrutiny that the reviewing court may hypothesize the legislative purpose behind legislative action." Boulder City v. Cinnamon Hills Assocs., 110 Nev. 238, 249, 871 P.2d 320, 327 (1994). "If any state of facts may reasonably be conceived to justify [the legislation], a statut[e] . . . will not be set aside." State v. District Court, 101 Nev. 658, 662, 708 P.2d 1022, 1025 (1985). Accordingly, the issue is limited to whether the Nevada Legislature could possibly have had any rational basis for prohibiting persons from having a blood alcohol level of .10 or more within two hours after driving.

---

We conclude that there is at least one conceivable rational basis for the enactment of NRS 484.379(1)(c), completely separable from the presumption condemned in McLean. Traffic safety is clearly an important state interest. Craig v. Boren, 429 U.S. 190 (1976). Accordingly, the State has a legitimate interest in preventing people from driving after ingesting any substance that will render them incapable of driving safely at any time in the following several hours. When people step behind the wheel of a car, they have no certain knowledge of the time that will be

required to reach their destination. Although they may have an idea of the time usually involved, they lack the clairvoyance necessary to forecast delays due to any number of common occurrences.

We also conclude that promotion of the rising blood alcohol defense, and the concomitant practice of rushing to one's car immediately after ingesting alcohol so as to get home before the alcohol is fully absorbed, is contrary to good public policy. Because drivers have little control over the traffic conditions and delays to which they are subject, the state has a legitimate interest in prohibiting people from driving at the onset of inevitably impending intoxication. We find that NRS 484.379(1)(c) is rationally related to this legitimate state interest, and is, therefore, not overbroad with respect to the rising blood alcohol defense.

Sereika's second overbreadth argument is that a person might not ingest the alcohol until *after* driving, but would still reach the prohibited level of blood alcohol within the critical two-hour period. Under such circumstances, the person would be in violation of NRS 484.379(1)(c) without ever having taken the type of risk contemplated by the legislature. Although we can conceive of no rational basis for enforcement of NRS 484.379(1)(c) in such a situation, we decline to address the constitutionality of such enforcement for the following reasons.

Sereika provides no evidence that NRS 484.379(1)(c) has ever been enforced in the manner he suggests, or that it is likely to be so enforced in the future. This court has declared that statutory interpretation should avoid absurd or unreasonable results. General Motors v. Jackson, 111 Nev. 1026, 1029, 900 P.2d 345, 348 (1995); Las Vegas Sun v. District Court, 104 Nev. 508, 511, 761 P.2d 849, 851 (1988); Sheriff v. Smith, 91 Nev. 729, 733, 542 P.2d 440, 443 (1975). Indeed, the legislature has signaled its intent to avoid such an absurd interpretation by enacting NRS 484.379(3), which creates an affirmative defense for defendants who have consumed alcohol after driving but before the blood alcohol test.[6] Given the general presumption that statutes will be interpreted in compliance with the Constitution, we decline to strike down an otherwise valid statute based on the unsubstantiated possibility of unconstitutional enforcement.

---

[6]NRS 484.379(3) provides that "[i]f consumption is proven by a preponderance of the evidence, it is an affirmative defense under paragraph (c) of subsection 1 that the defendant consumed a sufficient quantity of alcohol after driving or being in actual physical control of the vehicle, and before his blood was tested, to cause the alcohol in his blood to equal or exceed 0.10 percent."

Even if NRS 484.379(1)(c) had ever been enforced against someone who did not drink until after driving, Sereika lacks standing to bring the issue before this court. "A person to whom a statute may constitutionally be applied will not be heard to challenge that statute on the ground that it may conceivably be applied unconstitutionally to others, in other situations not before the [c]ourt." Broadrick v. Oklahoma, 413 U.S. 601, 610-11 (1973) (footnote omitted). Sereika does not contend that he consumed any alcohol during the period between his accident and the blood alcohol test, so the statute has not been applied against him in the manner hypothesized in his argument. Sereika also fails to invoke any specific exception to the established principles of standing. Accordingly, we conclude that he lacks standing to raise the present issue.

After considering each of Sereika's arguments, we conclude that NRS 484.379(1)(c) is neither vague nor overbroad, and affirm the judgment of the district court.

ROSE, J., concurring:

Sereika's conviction for driving under the influence of alcohol is based solely on NRS 484.379(1)(c), having a blood alcohol content of .10 or more within two hours after driving or being in actual physical control of a vehicle. The jury rejected the other two grounds available under NRS 484.379(1) upon which a person may be found guilty of being under the influence of intoxicating liquor while driving. I do not believe that subsection (c) of this statute alone can be relied upon to establish guilt beyond a reasonable doubt. However, I find sufficient evidence in the record to establish that Sereika was legally intoxicated when operating his motorcycle pursuant to NRS 484.379(1)(b).

The evidence presented at trial established that at approximately 1:00 a.m. a compact car ran into the rear of Sereika's motorcycle, tossing Sereika ten to fifteen feet forward onto the asphalt. One witness testified that Sereika appeared shaken immediately after the collision, but he did not smell any alcohol on Sereika's breath. The person whose car ran into Sereika stated that he was disheveled and walking with a limp. The first officer at the scene testified that she smelled alcohol on Sereika's breath and that he flunked three tests administered to determine whether he displayed indications of intoxication. Sereika told the investigating officer that he had three or four beers one-half hour earlier and had eaten a steak dinner an hour prior to the accident.

Sereika was taken to the Carson City jail and given two breath tests, one at 2:25 a.m. and the second one a minute later. He registered a .16 and .15 respectively on these tests. A criminalist testified that the intoxilyzer was properly calibrated and that the

tests using the machine would have been valid. On cross-examination, Sereika's attorney elicited from the criminalist that the average person will metabolize or burn off alcohol at the rate of .015 to .02 percent per hour, that alcohol is absorbed into the blood stream within one-half hour to one hour after drinking it, depending on whether it was consumed on an empty or full stomach, and that a 200 pound grown male adult like Sereika would have to consume seven to nine beers within two hours to reach a level of .15. Other than the statutory section under which he was convicted, the criminalist's testimony was the only evidence to show what blood alcohol content Sereika would have had at the time of the accident.

Two views have emerged from courts when faced with accepting a blood alcohol test result as presumptive or conclusive evidence of driving under the influence when no other expert testimony is presented to ascertain the driver's blood alcohol content when the vehicle was operated. In Miller v. State, 597 So. 2d 767, 769-70 (Fla. 1991), the Florida Supreme Court stated:

> The weight of authority is exemplified by *State v. Kubik*, 235 Neb. 612, 456 N.W.2d 487 (1990). In *Kubik*, the Nebraska Supreme Court held that the numerical blood-alcohol content was admissible evidence if obtained within a reasonable time after the defendant was stopped, even if the state cannot provide a scientific basis for extrapolating the blood-alcohol content back to the time when the defendant was operating a vehicle. The *Kubik* Court determined that the inability of the state to "relate back" was a question of credibility or the weight of the evidence, not admissibility, and that evidence of blood-alcohol content thus was admissible provided an unreasonable amount of time had not elapsed until the test was taken.

> The other line of cases is exemplified by *Desmond v. Superior Court*, 161 Ariz. 522, 779 P.2d 1261 (1989). In that case, the Arizona Supreme Court held that the inability to "relate back" a defendant's blood-alcohol content rendered the numerical reading of the test inadmissible because of its potential unreliability. However, the state still would be entitled to introduce evidence showing that, at the time the test was taken, the defendant tested positive for alcohol, *provided* the trial court gave a cautionary instruction. This instruction must inform the jury that the evidence of the presence of blood alcohol is admitted for the limited purpose of showing that the defendant had alcohol in the blood *at the time the test was taken* and that such evidence standing alone is not sufficient to show either that the defendant was

impaired or had an unlawful blood-alcohol level at the time a vehicle was being operated.

I prefer the line of authority espoused by the *Desmond* case and the requirement that additional evidence should be presented to show that the accused was intoxicated when he or she was operating the vehicle as well as when the blood or breath test was taken. As the concurrence in the *Miller* case noted, the state should be required to prove each element of the crime beyond a reasonable doubt, and this includes the fact that the accused was intoxicated when driving a vehicle:

> While I concur with the majority's analysis as far as it goes, I do so subject to the reservations expressed in my partial dissent in *Haas v. State*, 597 So. 2d 770 (Fla. 1992) (Kogan, J., concurring in part, dissenting in part). I agree that tests conducted on a blood sample taken within a reasonable time are admissible evidence, under the terms noted by the majority. However, I also find that the State remains subject to the requirement of proving beyond a reasonable doubt every element of the offense. U.S. Const. Amend. XIV; art. I, § 9, Fla. Const.

*Miller,* 597 So. 2d at 770 (Kogan, J., concurring).

One federal court has expressed concern with a statute that presumes or directs that a person is guilty of driving while intoxicated based solely on a test taken some time thereafter. In McLean v. Moran, 963 F.2d 1306 (9th Cir. 1992), the Ninth Circuit Court of Appeals had difficulty with the application of Nevada's law that presumed a person guilty of drunk driving if that person had a .10 or more blood alcohol content when tested after the accident. The court found that while the presumption may be valid if treated as a rebuttable presumption, it had been improperly applied as a conclusive presumption by the justice of the peace and, therefore, was unconstitutional. McLean argued, as did Sereika in the case at bar, that a blood alcohol level measured some time after a driver's arrest may be higher than if the test had been conducted immediately upon arrest and that the correlation between a person's blood alcohol level when driving and a blood alcohol test taken thereafter may fail the "beyond a reasonable doubt" standard necessary to convict in a criminal case. The court concluded:

> Absent the statutory presumption, the testimony of the police criminalist and the evidence regarding McLean's conduct at the time of her arrest may have failed to establish beyond a reasonable doubt that the [blood alcohol concentration] at the time of driving was at least 0.10%. Thus,

McLean's constitutional right to have the State prove every element of the crime beyond a reasonable doubt was violated by the conclusive presumption applied by the judge. Accordingly, McLean is entitled to habeas relief.

Although we decline to address the facial constitutionality of the statute, we note that, on its face, the type of presumption § 484.381(1) establishes is subject to varying interpretations. The statute may establish a mandatory conclusive or rebuttable presumption and thus raise serious constitutional questions, because the statute does not indicate that the factfinder is free to reject the presumption.

*Id.* at 1310-11.

The Nevada legislature responded to the *McLean* decision by eliminating the presumption of intoxication and replaced it with a law stating that a person is guilty of drunk driving if he or she has a blood alcohol content of .10 or more within two hours of driving a vehicle. To cure any problem that a presumption of intoxication presented in light of the *McLean* case, the legislature replaced it with a directive; and it seems that such corrective action is going from the frying pan into the fire. The real cure to the problem is to require that some additional evidence be required to show the correlation between the blood alcohol test taken hours after driving and the blood alcohol content when the accused was driving.

While no expert testimony was elicited to establish directly what Sereika's blood alcohol content would have been at the time of the collision, the criminalist's testimony provided sufficient information about the time it takes to absorb and metabolize alcohol to show that Sereika was intoxicated when driving pursuant to either NRS 484.379(1)(a) or (b). Therefore, this conviction is supported by credible evidence and does not rest solely on NRS 484.379(1)(c). Accordingly, I concur in the majority's decision affirming the conviction.