DA 13-0280

# IN THE SUPREME COURT OF THE STATE OF MONTANA

2013 MT 374

STATE OF MONTANA,

        Plaintiff and Appellee,

  v.

WILLIAM CALVERT,

        Defendant and Appellant.

APPEAL FROM:    District Court of the Eighteenth Judicial District,
In and For the County of Gallatin, Cause No. DC 11-187B
Honorable Mike Salvagni, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

                Wade Zolynski, Chief Appellate Defender; Gregory Hood, Assistant
Appellate Defender; Helena, Montana

        For Appellee:

                Timothy C. Fox, Montana Attorney General; Jonathan M. Krauss,
Assistant Attorney General; Helena, Montana

                Marty Lambert, Gallatin County Attorney; Deborah Pratt, Deputy County
Attorney; Bozeman, Montana

Submitted on Briefs:  November 20, 2013

Decided:  December 17, 2013

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1     The State charged William R. Calvert (Calvert) with a fourth offense of driving under the influence of alcohol, a felony. The District Court for the Eighteenth Judicial District, Gallatin County, denied Calvert's motion to dismiss the felony charge, and Calvert subsequently pled guilty, reserving the right to appeal the District Court's ruling. We restate Calvert's sole issue on appeal as follows:

¶2     *Did the District Court err by denying Calvert's motion to dismiss the felony DUI charge on the ground that two of his prior offenses were imposed under a Nevada statute not sufficiently similar to Montana's DUI statutes?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶3     On September 2, 2011, Officer Courtis of the Bozeman Police Department received a tip from a pedestrian that a visibly intoxicated man was attempting to wash his car at the Chevron Super Save. Officer Courtis located the vehicle and followed it to a residence. Upon making contact with the driver, who eventually proved to be Calvert, Officer Courtis noticed a strong smell of alcohol emanating from the vehicle. Calvert stated that he had had "too much" to drink and provided a breath sample registering .223 blood alcohol content (BAC). Officer Courtis then arrested Calvert and took him to the police station for booking where he registered .226 BAC.

¶4     On September 23, 2011, the State charged Calvert with fourth-offense DUI, a felony pursuant to § 61-8-731(1), MCA. As the basis for the felony charge, the State cited Calvert's three prior DUI convictions in Nevada:

2

1. **Carson City Justice Court, Nevada: Case No. A-09096**, violation on March 7, 1996 (conviction on October 16, 1997), pursuant to Carson City Municipal Code 10.22.020.

2. **First Judicial District Court, Carson City, Nevada: Case No. 98-00523C**, violation on July 17, 1996 (convicted on July 20, 1998), pursuant to Nevada Revised Statutes 484.379.

3. **Second Judicial District Court, Washoe County, Nevada: Case No. CR01-2520**, violation on August 12, 2001 (convicted on March 1, 2002), pursuant to Nevada Revised Statutes 484.379.

Calvert admitted to these convictions, but moved to dismiss the felony charge on the ground that his second and third DUI convictions were premised on a Nevada statute that was not sufficiently similar to Montana's DUI and DUI *per se* statutes to constitute prior convictions for purposes of supporting a felony charge.[1] The District Court rejected Calvert's argument, concluding that the Nevada statute was "sufficiently similar" to Montana's statutes, and denied the motion to dismiss.

¶5 Calvert then pled guilty to felony DUI, reserving his right to appeal the District Court's ruling on his motion to dismiss. The District Court sentenced him to a thirteen month commitment to the Department of Corrections for placement in an appropriate correctional facility or program, followed by a consecutive four-year term that was suspended with conditions. Upon Calvert's motion, the District Court stayed execution of the sentence pending this appeal.

---

[1] Calvert did not challenge his first DUI conviction under Carson City's Municipal Code.

3

**STANDARD OF REVIEW**

¶6 "Whether a prior conviction may be used for sentence enhancement is generally a question of law." *State v. Maine*, 2011 MT 90, ¶ 12, 360 Mont. 182, 255 P.3d 64. This Court reviews a District Court's conclusions of law when applying a statute for correctness. *State v. McNally*, 2002 MT 160, ¶ 5, 310 Mont. 396, 50 P.3d 1080 (citations omitted).

**DISCUSSION**

¶7 *Did the District Court err by denying Calvert's motion to dismiss the felony DUI charge on the ground that two of his prior offenses were imposed under a Nevada statute not sufficiently similar to Montana's DUI statutes?*

¶8 Pursuant to Montana's statutory scheme, driving under the influence of alcohol is "generally charged under either § 61-8-401, MCA (DUI),[2] or § 61-8-406, MCA (DUI *per se*)." *McNally*, ¶ 7. A fourth or subsequent conviction under either of these statutes constitutes a felony. Section 61-8-731(1), MCA. For purposes of this provision, "conviction" includes a conviction under "a similar statute or regulation in another state." Section 61-8-734(1)(a), MCA. In evaluating whether another state's statutes are similar to Montana's statutes, we compare the statutes in effect at the time the offense was committed. *See State v. Polaski*, 2005 MT 13, ¶¶ 16-17, 325 Mont. 351, 106 P.3d 538. It matters not whether another state organizes its statutes differently than Montana, so long as they contain analogous provisions. *State v. Hall*, 2004 MT 106, ¶ 20, 321 Mont. 78,

---

[2] Calvert's guilty plea in this case resulted from a charge under § 61-8-401, MCA.

88 P.3d 1273. However, if another state allows a defendant to be convicted "using a lesser standard than would be required in Montana for a conviction, the statutes are not similar for purposes of § 61-8-734(1)(a), MCA." *Polaski*, ¶ 22 (citing *McNally*, ¶ 22).

¶9 Calvert's second (1996) and third (2001) DUI charges, and his later convictions on these charges, were based on violations of Nevada Revised Statutes § 484.379. The record does not clearly demonstrate under which specific subsection of this Nevada statute Calvert was charged and convicted in either instance. In 1996, the statute provided:

> 1. It is unlawful for any person who:
>
> > (a) Is under the influence of intoxicating liquor;
> > (b) Has 0.10 percent or more by weight of alcohol in his blood; or
> > (c) Is found by measurement within 2 hours after driving or being in actual physical control of a vehicle to have 0.10 percent or more by weight of alcohol in his blood,
>
> to drive or be in actual physical control of a vehicle on a highway or on premises to which the public has access.

Nev. Rev. Stat. § 484.379(1) (1995). The statute also provided that "it is an affirmative defense under paragraph (c) of subsection 1 that the defendant consumed a sufficient quantity of alcohol after driving or being in actual physical control of the vehicle, and before his blood was tested, to cause the alcohol in his blood to equal or exceed 0.10 percent." Nev. Rev. Stat. § 484.379(3) (1995). By 2001, all references to "in his blood" had been amended to include "in his blood or breath."

5

¶10     Turning to our law, in 1996, Montana's DUI statute provided:

>  (1)  It is unlawful . . . for any person who is under the influence of:
>
>>  (a)   alcohol to drive or be in actual physical control of a vehicle upon the ways of this state open to the public;
>
>  .   .   .
>
>  (3)  "Under the influence" means that as a result of taking into the body alcohol, drugs, or any combination thereof, a person's ability to safely operate a motor vehicle has been diminished.

Section 61-8-401, MCA (1995).  Montana's DUI *per se* statute then provided:

>  It is unlawful . . . for any person to drive or be in actual physical control of a vehicle upon the ways of this state open to the public while the person's alcohol concentration, as shown by analysis of the person's blood, breath, or urine, is 0.10 or more.

Section 61-8-406, MCA (1995). Both of these statutes remained largely unchanged through 2001.[3]

¶11     Calvert argues that Nevada's statute is not sufficiently similar to Montana's DUI and DUI *per se* statutes to support his felony conviction of fourth or subsequent DUI.  He focuses on the language in subsection 1(c) of Nevada's statute, which criminalizes the act of having a BAC of 0.10 or higher *within two hours after driving* "regardless of whether it was over the limit while driving."  *See* Nev. Rev. Stat. § 484.379(1)(c).  Calvert contrasts this subsection with Montana's DUI *per se* statute, which criminalizes the act of maintaining a BAC of 0.10 or higher *while driving*.  *See* § 61-8-406, MCA.  Calvert

---

[3] In 2003, the Legislature lowered the *per se* BAC standard to 0.08.

asserts that the Nevada statute proscribes behavior that would be legal in Montana, and argues that this distinction creates a "lesser standard of culpability" for conviction under Nevada law. He offers a scenario wherein Nevada's statute would criminalize conduct that Montana's would not. He contends that a defendant could consume alcohol either before or during driving, but never actually exceed the legal limit until after driving, due to rising blood alcohol levels. In this situation, he explains, a person would be liable for exceeding the legal limit *within two hours after driving* in Nevada, but would not be liable for exceeding the legal limit *while driving* in Montana. For support, Calvert cites the Nevada Supreme Court's statement in *Sereika v. State*, 955 P.2d 175, 179 (Nev. 1998) that "a defendant's blood alcohol level at the time of driving is simply irrelevant to his violation of NRS 484.379(1)(c)."

¶12 We, however, view Calvert's distinction as contrived and not realistic. The Nevada Supreme Court's further comments in *Sereika* demonstrate that the function of the Nevada statute, like Montana's statute, is to criminalize high alcohol levels *while driving*. "[T]he state has a legitimate interest in prohibiting people from driving at the onset of inevitably impending intoxication." *Sereika*, 955 P.2d at 180. Noting that "[w]hen people step behind the wheel of a car, they have no certain knowledge of the time that will be required to reach their destination," the Nevada Court reasoned that the Nevada statute served the State's interest "in *preventing people from driving after ingesting* any substance that will render them incapable of driving safely at any time in

7

the following several hours." *Sereika*, 955 P.2d at 180 (emphasis added). The statutes are thus similar in their function.

¶13 Regarding culpability, both statutes require the State to prove that a defendant was driving or in actual physical control of a vehicle, and that his BAC was at or above the legal limit in relation to his driving. *See* Nev. Rev. Stat. § 484.379(1)(c); § 61-8-406, MCA. As the State notes, neither the Nevada nor the Montana statute actually requires the State to prove the precise BAC level that existed during the time of driving. In Montana, law enforcement may administer tests within a "reasonable amount of time after the alleged act of driving while under the influence" in order to satisfy the burden of proof. *State v. McGowan*, 2006 MT 163, ¶ 17, 332 Mont. 490, 139 P.3d 841. We reasoned in *McGowan* that requiring law enforcement "to determine a person's alcohol concentration while driving" would be impossible and lead to absurd legal results. *McGowan*, ¶ 17. While we recognize a temporal distinction between criminalizing the act of being intoxicated *within two hours after driving* and admitting the results of a test administered within "a reasonable amount of time after" driving to prove intoxication *while driving*, *McGowan*, ¶ 17, we agree with the District Court that this difference between the two statutes is not significant for purposes of § 61-8-734(1)(a), MCA, and that the statutes are sufficiently similar to support Calvert's felony conviction under Montana law.

¶14 Further, our cases generally analyze culpability in regard to the level of impairment a statute criminalizes. *McNally*, ¶ 22 (determining that impairment "to the slightest degree" under Colorado law was a lesser standard than "diminished" under Montana law); *Hall*, ¶¶ 19-22 (determining that "lessened in any appreciable degree" along with a 0.10 percent *per se* subsection under Washington law was not a lesser standard than under Montana law). Here, the level of impairment under subsection 1(c) of Nevada's statute is the same as in Montana's DUI *per se* statute—0.10 percent.

¶15 Lastly, Calvert argues that in situations where a defendant does not start drinking until after driving, but is tested within two hours of driving, Nevada's statute creates a lower standard of culpability by shifting the burden to the defendant to prove that he started drinking after driving. *See* Nev. Rev. Stat. § 484.379(3). Calvert argues that, in Montana, the State always bears the burden of proving that the defendant actually drove with a BAC above the legal limit.

¶16 Notably, when the Nevada Supreme Court was presented with a constitutional challenge to the statute under this "drinking after driving" scenario, it refused to undertake review of the issue, reasoning that there was no evidence the statute "has ever been enforced" in this manner and that "we can conceive of no rational basis for enforcement of [the statute] in such a situation. . . . [W]e decline to strike down an otherwise valid statute based on the unsubstantiated possibility of unconstitutional enforcement." *Sereika*, 955 P.2d at 180. The Court further concluded that such an

9

interpretation of the statute would lead to "absurd or unreasonable results." *Sereika*, 955 P.2d at 180 (citations omitted). Calvert has presented no evidence that he started drinking only after he ceased driving in either of his Nevada convictions. Again, we do not believe that this distinction provides a realistic basis to conclude the statutes are not similar.

¶17 Affirmed.

/S/ JIM RICE

We concur:

/S/ MIKE McGRATH
/S/ PATRICIA COTTER
/S/ MICHAEL E WHEAT
/S/ BETH BAKER